1 | Andrew Goodman, Esq. (State Bar No. 115685)
**GOODMAN LAW OFFICES**
2 | **A PROFESSIONAL CORPORATION**
6345 Balboa Boulevard, Suite I-300
3 | Encino, California 91316-1523
PHONE: (818) 827-5169; FAX: (818) 975-5256
4 | E-Mail: agoodman@andyglaw.com

5

(Proposed) Attorneys for Debtor and Debtor In Possession
6 | Rajysan, Inc. dba MMD Equipment

7

8

9 | **UNITED STATE BANKRUPTCY COURT**

10 | **CENTRAL DISTRICT OF CALIFORNIA**

11 | **NORTHERN DIVISION**

12

13 | In Re

CASE NO. 9:17-bk-11363-PC

14 | RAJYSAN, INC. dba MMD EQUIPMENT, a
California corporation.

Chapter 11

15 | **NOTICE OF MOTION AND
EMERGENCY MOTION FOR INTERIM
16 | AND FINAL ORDER AUTHORIZING:
(1) THE CONDUCT OF ASSET AND
17 | INVENTORY LIQUIDATION SALE;
(2) THE EMPLOYMENT AND
Debtor. | RETENTION OF GA GLOBAL
18 | PARTNERS AS LIQUIDATION AGENT
EFFECTIVE AUGUST 14, 2017;
19 | (3) THE REJECTION OF DEBTOR'S
NON-RESIDENTIAL REAL PROPERTY
20 | LEASE AND SURRENDER OF
LEASEHOLD; AND
21 | (4) RELATED RELIEF**

22 | **MEMORANDUM OF POINTS AND
AUTHORITIES; DECLARATIONS OF
23 | GURPREET SAHANI AND MARK
WEITZ**

24

25 | <u>**Emergency Hearing**</u>
DATE: August 22, 2017
26 | TIME: 10:00 a.m.
PLACE: Courtroom 201
27 | 1415 State Street
Santa Barbara, CA.

28

1

# TABLE OF CONTENTS

I.      I. JURISDICTION ................................................................................................. 5

II.     II. BACKGROUND FACTS ................................................................................... 5

    A.      History.................................................................................................... 5

    B.      Disputes With Gurmeet Sahani............................................................... 6

    C.      Reasons For Filing Chapter 11. .............................................................. 8

III.    THE ASSET AND INVENTORY LIQUIDATION ............................................... 9

    A.      The Proposed Liquidation Sale. ............................................................. 9

    B.      The Proposed Employment of GA Global Partners................................. 10

IV.     ARGUMENT .................................................................................................... 12

    A.      The Court Should Permit the Conducting of the Inventory Sale. ........... 12

        1.      The Debtor Has a Valid Business Justification for the Inventory Sale..... 12

        2.      The Court Should Approve The Sale Free and Clear of all Liens,

Encubrances and Other Interests Under Bankruptcy Code Section 363(f)........................... 14

        3.      The Court Should Approve the Discretionary Abandonment of Certain

Property In Connection with Any Liquidation Sale. .............................................. 15

    B.      Retention and Employment of the Liquidator is Permitted Under Sections
327 and 328 of the Bankruptcy Code. ................................................. 166

    C.      Debtor Has Shown Good Cause for the Lease Rejection. . . . . . . . . . . . . . . . . . 18

    D.      The Order Should Be Effective Immediately. ...................................... 189

V.      CONCLUSION................................................................................................. 20

DECLARATION OF GURPREET SAHANI ............................................................ 21

DECLARATION OF MARK WEITZ...................................................................... 26

TABLE OF AUTHORITIES

**CASES**

*Catalano v C.I.R,* 279 F.3d 682, 685 (9th Cir. 2002) ................................................ 15

*Citicorp Homeowners Servs., Inc. v Elliot (In re Elliot),* 94 B.R. 343, 345 (E.D. Pa. 1988) ....... 14

*Comm of Equity Sec. Holders v Lionel Corp. (In re Lionel Corp),* 722 F.2d 1063, 1071 (2d Cir. 1983) ................................................................................................................ 13

*Fulton State Bank v Schipper (In re Schipper),* 933 F.2d 513, 515 (7th Cir. 1991) ..................... 13

*In re 240 N. Brand Partners, Ltd.,* 200 B.R. 653, 659 (BAP 9th Cir. 1996) ................................. 13

*In re General Wireless [RadioShack II],* Case No 17-10506 (BLS)(Bankr. D.Del. April 10, 2017) ................................................................................................................ 17

*In re Minges,* 602 F.2d 28, 43 (3d Cir. 1979) ................................................................. 18

*In re Nat'l Gypsum Co.,* 123 F.3d 861 (5th Cir. 1997) ...................................................... 17

*In re Old Carco LLC,* 406 B.R. 180, 188 (Bankr S.D.N.Y.. 2009) ......................................... 19

*In re Pomona Valley Med. Group, Inc.,* 476 F.3d 665, 670 (9th Cir. 2007); ............................. 18

*In re Pomona Valley Med. Grp., Inc.* 476 F.3d at 670 (9th Cir. 2007) ................................... 18

*Myers v Martin (In re Martin),* 91 F.3d 389, 395 (3d Cir. 1996) ........................................ 13

*Official Comm. Of Subordinated Bondholders v Integrated Res., Inc. (In re Integrated Res. Inc.)* 147 B.R. 650, 656 (S.D.N.Y. 1990) .................................................................. 13

*Orion Pictures Corp v. Showtime Networks (In re Orion Pictures Corp.)* 4 F.3d 1095, 1098 (2d Cir. 1993) ........................................................................................................ 19

*Summit Land Co. v Allen (In re Summit Land Co.)* 13 B.R. 310, 315 (Bankr. D. Utah 1981) ..... 18

**STATUTES**

11 U.S.C. § 101(14) .............................................................................................. 16

11 U.S.C. § 101(31)(B) .......................................................................................... 16

11 U.S.C. § 327(a) ............................................................................................... 16

11 U.S.C. § 328(a) ............................................................................................... 16

11 U.S.C. § 363(b)(1) ........................................................................................... 12

11 U.S.C. § 363(f) ............................................................................................... 14

11 U.S.C. §554(a) ............................................................................................... 15

28 U.S.C. § 1408 ............................................................................................................. 5

28 U.S.C. § 157 ............................................................................................................... 5

Fed.R.Bankr.P. 6003 ..................................................................................................... 19

1    TO THE HONORABLE PETER CARROLL, UNITED STATES BANKRUPTCY

2    JUDGE, THE UNITED STATES TRUSTEE, ALL PARTIES IN INTEREST HEREIN AND

3    THEIR RESPECTIVE COUNSEL.

4    **PLEASE TAKE NOTICE** that Debtor and Debtor in Possession Rajysan, Inc., dba

5    MMD Equipment ("MMD" or the "Debtor") hereby submits this motion (the "Motion") on an

6    emergency basis for entry of an order pursuant to sections 105, 327, 328, 362, 363, 365, 554,

7    1107 and 1108 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003

8    and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules and each a

9    "Bankruptcy Rule) authorizing: (i) the Debtor to conduct a liquidation of its assets and inventory

10    ("Liquidation Sale"); (ii) the employment and retention of GA Global Partners ("GAGP" or the

11    "Liquidation Consultant") to conduct the Liquidation Sale effective August 14, 2017, including

12    the approval of that certain agreement (the "Liquidation Agreement") dated as of August 11,

13    2017, by and between the Debtor and GA Global Partners; (iii) authorizing the rejection of the

14    lease for the premises located at 4175 Guardian Street, Simi Valley, California 93063; and (iv)

15    granting related relief. A copy of the liquidation proposal is attached hereto as **Exhibit "A"**.

16    As set forth in the accompanying Memorandum of Points and Authorities, there are good

17    and sufficient grounds for granting this Motion. As a result of certain pre-petition actions of prior

18    management and the loss of an exclusive distribution agreement in January 2017, Debtor does

19    not have the funds to continue ongoing operations. Debtor has determined, in its business

20    judgement, that the best option for maximum distribution to creditors is to conduct the

21    Liquidation Sale, obtain the highest and best possible price for its assets and repay its creditors

22    from the monies generated from the Liquidation Sale and other assets of the Debtor. The Debtor

23    now seeks to retain an experienced liquidation expert, GA Global Partners, to conduct and

24    complete the Liquidation Sale pursuant to the proposal which contemplates a four (4) week

25    liquidation sales process (terminating on September 8, 2017). In order to maximize the value of

26    the inventory, given a lack of business operations and given that Debtor seeks to minimize costs

27    and rent in continuing to occupy its 127,000 square foot facility, the Debtor seeks this relief on

28    an emergency basis.

1    This Motion is based upon these moving papers, the accompanying Memorandum of

2    Points and Authorities, the Declaration of Gurpreet Sahani, CEO of the Debtor and Mark Weitz

3    of GA Global Partners, the records and pleadings in this case, the arguments and representations

4    of counsel, and any oral or documentary evidence presented at or prior to the time of the hearing.

5    **PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule 2081-1

6    this Motion may be heard pursuant to Local Bankruptcy Rule 9075-1 as an emergency motion.

7    Pursuant to Local Bankruptcy Rule 9075-1, any response, written or oral, to the moving papers

8    may be presented before or at the time of the hearing on the Motion.

9    **PLEASE TAKE FURTHER NOTICE** that the Debtor will serve this Notice and

10    Motion and Emergency Motion, the attached Memorandum of Points and Authorities, and

11    Declarations on the following parties or, in lieu thereof, to their counsel, if known: (a) the Office

12    of the United States Trustee, (b) the landlord who is party to the lease affected by the Liquidation

13    Sale; (c) GemCap, the Debtor's secured lender; (d) any other known secured creditors; and (e)

14    parties that file with the Court and serve upon the Debtor requests for notice of all matters in

15    accordance with Bankruptcy Rule 2002. The Debtor will also give telephonic notice of the

16    hearing set hereon and substance thereof, to the Debtor's 20 largest unsecured creditors. In the

17    event that the Court grants the relief requested by the Motion, the Debtor shall provide notice of

18    the entry of the order granting such relief upon each of the forgoing parties and any other parties

19    in interest as the Court directs. The debtor submits that such notice is sufficient and that no other

20    or further notice need be given.

21    **WHEREFORE**, for all the foregoing reasons, and such additional reasons as may be

22    advanced at or prior to the hearing on this Motion, the Debtor respectfully requests that the Court

23    enter an Order, on an emergency basis, authorizing: (1) the Debtor to conduct the Liquidation

24    Sale and approving the Sale Guidelines; (2) the employment and retention of the GAGP effective

25    ///

26    ////

27    ///

28    ///

1    August 14, 2017, including approval of the Liquidation Proposal; and (3) such other relief as if

2    just and proper.

3    DATED: August **18**, 2017           GOODMAN LAW OFFICES

4                                        A Professional Corporation

5

6                             By: _____

7                                  ANDREW GOODMAN
                                  Proposed counsel for
                                  Rajysan, Inc. dba MMD Equipment

## MEMORANDUM OF POINTS AND AUTHORITIES

Debtor and Debtor in Possession, Rajysan, Inc. dba MMD Equipment, a California corporation ("MMD" or "Debtor"), having commenced this Chapter 11 bankruptcy case on July 29, 2017 (the "Petition Date") hereby submits this motion (the "Motion") on an emergency basis, authorizing the Debtor to conduct a sale of its assets and inventory, employ a liquidation agent, approve the liquidation proposal and related relief as more fully set forth herein.

## I.   JURISDICTION

This Court has jurisdiction over these matters pursuant to 28 U.S.C. § 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The venue of the case is proper pursuant to 28 U.S.C. § 1408 and 1409. The Debtor consents to the entry of a final judgment or order with respect to the Motion if it is determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution. The statutory predicates for the relief requested herein are sections 105, 327, 328, 362, 363, 365, 554, 1107 and 1108 of title 11 of the United States Code (the "Bankruptcy Code"); and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules" and each a "Bankruptcy Rule").

## II.   BACKGROUND FACTS

### A.   History

Debtor has been, essentially a family run business. The shareholders are Amarjit Sahani, Rajinder Sahani, Gurpreet Sahani and Gurmeet Sahani. Amarjit and Rajinder Sahani are the parents of Gurpreet ("Pete") Sahani and Gurmeet Sahani.

The Debtor was incorporated in 1991. From 1991 through 2007, Debtor's core business was the manufacturing, import export, and wholesale distribution of parts for forklift and material handling equipment. In 2007, the assets were sold.

In May of 2009, Debtor purchased the assets of Mitsui Machinery Distribution (MMD) and operated under the dba MMD Equipment. From 2009 through 2017, Debtor was the exclusive distributor of AIRMAN towable diesel driven air compressors and towable diesel driven generators. These are manufactured in Japan by Hokuetsu Industries Co., Ltd.

## B.    Disputes With Gurmeet Sahani

From in or around 2007 until September 11, 2013, Gurmeet Sahani held the titles of and acted as the President and Chief Executive Officer of Rajysan. While acting as Rajysan's President and Chief Executive Officer, Gurmeet assumed a major role in the operation and management of the company, took primary control over corporate operation and management, and shut Rajysan's other officers and directors out of business decisions.

Beginning in October 2012, disputes began between Gurmeet, and the other directors, officers, and shareholders of Rajysan, with respect to the management of Rajysan. In or about October 2012, Gurmeet proposed to Rajysan's other shareholders and directors that the corporation be restructured. In or about late October or November 2012, Gurmeet presented Rajysan's other shareholders and directors with a proposal to restructure the corporation, pursuant to which new corporate entities would be formed; Rajysan's assets and ongoing business would be transferred to and divided amongst the newly formed entities, and Rajysan would be turned into a management company that would manage the business of the newly-formed entities; ownership in Rajysan would be changed to make Gurmeet the majority owner of the company, to give Jasmine an ownership interest in Rajysan and to reduce Rajinder, Amarjit, and Gurpreet Sahani's ownership interests in Rajysan; and Gurmeet would own a majority or a significant portion of the stock in the newly-formed entities. Rajysan's other directors and shareholders rejected Gurmeet's proposed restructuring plan in its entirety.

Unknown to Rajysan and its other shareholders and directors, prior to Gurmeet

proposing the above-referenced restructuring of Rajysan, Gurmeet had already formed two new entities. Invincia and Invincia Equipment Sales Co., Inc., for the purpose of transferring assets and business of Rajysan into those new entities. In fact, Gurmeet had begun conducting business as "Invincia" and "Invincia Finance Co." as early as September 12, 2012. Beginning in September 2012, Gurmeet initiated a series of transactions, whereby Invincia induced one of Rajysan's largest customers, Hertz Equipment Rental Corporation (hereinafter, "Hertz") to reissue a purchase order for $6,804,000 from Rajysan to Invincia. Invincia then purchased large quantities of equipment from Rajysan at a discounted price, and sold such equipment to Hertz at the fair market value associated with such equipment. Invincia retained for itself all profits derived from its sales of the equipment it purchased from Rajysan. As a result of the foregoing scheme, Rajysan lost revenues and profits in the amount of $2,574,990, the difference between the amount Hertz paid Invincia for the equipment and what Invincia paid Rajysan to purchase the equipment.

On August 9, 2013, Gurmeet formed two additional new entities for the purpose of transferring assets and business of Rajysan into those new entities, MMD Equipment, LLC and Lynxrite Engineered Solutions, LLC. Notably, Rajysan does business under the names "MMD Equipment" and "Lynxrite", and Rajysan owns the registered trademarks MMD Equipment (U.S. Reg. No. 3028559) and Lynxrite (U.S. Reg. No. 4298173).

In an effort to prevent Gurmeet from further malfeasance, on August 16, 2013, the Board of Directors of Rajysan called a duly noticed special meeting, wherein the majority of members of the Board of Directors adopted Bylaws for Rajysan, which, among other things, prohibited any officer of Rajysan from incurring any indebtedness on behalf of the corporation in excess of Ten Thousand Dollars ($10,000.00) without obtaining the prior written consent of the majority of the Board of Directors.

Thereafter, Pete Sahani learned from Rajysan's bank, PNC Bank, that Gurmeet had applied to PNC Bank for the issuance of a $20,000,000 line of credit jointly in the names of Rajysan and Gurmeet's newly-formed entity, Invincia Equipment Sales Co., Inc. The application for the letter of credit was executed by Gurmeet and Jasmine.

On September 11, 2013, the Board of Directors called a duly noticed special meeting, wherein the majority of members of the Board of Directors elected to terminate Gurmeet as an officer and employee of Rajysan, effective immediately. Despite the fact that he was terminated and his ability to act on behalf of Rajysan was restricted to only performed actions approved by the other shareholders of the corporation, at 3:15 a.m. on September 12, 2013, Gurmeet initiated a wire transfer from Rajysan's operating account in the amount of $500,000, which amount was transferred into Gurmeet's personal account. Despite having no authority to do so, Jasmine purportedly approved the wire transfer on behalf of Rajysan.

On October 9, 2013, Debtor filed an action against Gurmeet, Jasmine, Halcyon and Invincia in the Los Angeles Superior Court for Breach of Fiduciary Duty, Conversion, etc. On January 21, 2014, Jasmine Sahani filed a Cross-Complaint against Amarjit Sahani, Rajinder Sahani  Gurpreet Sahani and Rajysan. Discovery has been completed on both actions and the parties are awaiting a trial date.

**C.**    **Reasons For Filing Chapter 11.**

In addition to the large amounts of money stolen and diverted by Gurmeet Sahani and his wife Jasmine Sahani, Debtor lost its exclusive distributorship with Hokuetsu Industries Co., Ltd. in early 2017 due to various violations of the agreement during Gurmeet's tenure as CEO and non-performance of the company due to liquidity issues mainly arising from Gurmeet and Jasmine's actions partially set forth above. This agreement was worth a substantial sum of money each year to Rajysan. (See Declaration of Gurpreet Sahani, ¶ 7)

Lastly, Debtor lost a significant amount of business due to oil prices crashing in 2014-2015. The company was focused on the oil and gas sector almost exclusively and had no other sales strategy under Gurmeet Sahani's tenure. This narrow focus led to a very large concentration of business with one customer. When oil prices crashed MMD lost more than 50% of its sales almost overnight.

## III.    THE ASSET AND INVENTORY LIQUIDATION

### A.    The Proposed Liquidation Sale.

As discussed above, as a result of Gurmeet and Jasmine Sahani diverting substantial monies and as a result of the business decisions made by Gurmeet during his tenure in charge of the Debtor's operations, Debtor was left no choice but to liquidate its assets and maximize their value for the benefit of creditors. Debtor initially sought to execute an Assignment for Benefit of Creditors which was opposed by Gurmeet. Gurmeet, instead sought the appointment of a Receiver. After the Superior Court issued a tentative ruling appointing a receiver and before entry of any order by the Superior Court, Debtor filed this Chapter 11 proceeding.

After filing the Petition, Debtor spoke and met with three different companies which specialize in liquidating assets in Chapter 7 and Chapter 11 bankruptcy proceedings. Ultimately, on or about August 11, 2017, Debtor decided to retain, subject to Court approval GAGP to conduct the Liquidation Sale. A true and correct copy of the liquidation proposal is attached hereto as **Exhibit "A"**.

The expeditious conduct and completion of the Liquidation Sale will maximize the value of the Debtor's assets for the benefit of creditors and minimize the post-petition lease obligations incurred by the Debtor. Debtor leases a 127,000 square foot facility in Simi Valley California (the "Premises"). Debtor rents the facility from Borstein Enterprises (the "Landlord"). The current monthly rent for the facility is approximately $66,000.00 and CAM charges are

approximately $22,000.00. The term of the lease runs through July 2019. Allowing the sale to take as soon as possible will reduce the exposure of the Debtor with regard to rent and CAM charges to the Landlord.

### B. The Proposed Employment of GA Global Partners.

Given that Debtor is not operating on a day-to-day basis, Debtor immediately conferred with prospective liquidating agents and assessed the costs associated with engaging a liquidating agent to conduct the Liquidation Sale. Such prospective liquidating agents included Tiger Commercial and Industrial ("Tiger"), Perfection Industrial Sales and GA Global Partners ("GAGP"). Ultimately, after considering proposals from all three agents, the Debtor determined, in its business judgment that the best proposal and the best agent to perform the Liquidation Sale was GAGP.

GAGP has extensive expertise in the orderly liquidation of inventory, furniture, fixtures, equipment and other assets, including that of similar companies and inventories. The principals of GA Global have over 30 years of practical experience in liquidations auctions, insolvency, valuations and asset monetization. GAGP is the Industrial Disposition Arm of Great American Group, one of the largest and most prestigious Auction/Liquidation companies in the United States. GAGP's asset disposition team has conducted thousands of liquidation and auction assignments with the aggregate value of liquidated assets measured in the billions of dollars.

Under the terms of the agreement GAGP will serve as Liquidating Agent The Debtor seeks to employ the GAGP so that the Debtor may leverage the experience and resources of GAGP in swiftly performing and completing the liquidation while retaining control over the sale process, which the Debtor believes will provide maximum benefit to the estate. A true and correct copy of the GAGP proposal is attached hereto as **Exhibit "A"**.

GAGP is being employed by the Debtor pursuant to sections 327(a) and 328(a) of the Bankruptcy Code to provide liquidating services to the Debtor. It is standard practice in the Liquidation Consultant's industry for professional to be compensated on a fixed or percentage fee basis, rather than on an incremental hourly basis, for such services. It is not the general practice of, nor is it feasible for, GAGP to keep detailed time records similar to those customarily kept by attorneys. As such, under the terms of the Liquidation Agreement, the Debtor has agreed to compensate GAGP for fees and expenses consistent with industry practice.

In accordance with the proposal, GAGP is entitled to compensation as follows: GAGP proposes a Net Guarantee of $204,500 for all of the contemplated Assets & Equipment. All proceeds over the Net Guarantee would be split as follows: the next $30,000 would go to GAGP for expense reimbursement and initial compensation and all proceeds above $234,500.00 would be split 85/15 with Debtor receiving the larger share. GAGP would pay all direct sale related expense and would charge and retain an eighteen percent (18%) Buyer's Premium.

To the best of the Debtor's knowledge, information and belief, other than as set forth in the Weitz Declaration, GAGP: (a) has no connection with the Debtor, its creditors, other parties in interest, or the attorneys or accountants of any of the foregoing, or the United States Trustee or any person employed in the Office of the United States Trustee; (b) does not hold any interest adverse to the Debtor's estate; and (c) believes it is a "disinterested person" as defined by section 101(14) of the Bankruptcy Code. Accordingly, the Debtor believes that GAGP is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code.

GAGP will review its files periodically during the pendency of this chapter 11 case to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise in such review, GAGP will use reasonable efforts to

identify such further developments and will promptly file a supplemental affidavit, as required by Bankruptcy Rule 2014(a).

C. **The Rejection of Non-Residential Real Property Leaseand Surrender of Debtor's Interest In Real Property**

As discussed above, Debtor is no longer operated its business. At the time of the filing of the Petition Debtor leases ONE property, located 4175 Guardian Street, Simi Valley, California 93063 (the "Premises"). The landlord for the Premises is Borstein Enterprises, 11766 Wilshire Boulevard, Suite 820, Los Angeles, California 90025.

In order to maximize a return to its creditors, Debtor is seeking the retention of a Liquidation Consultant and permission to conduct a Liquidation Sale of all of its remaining assets, inventory, equipment, etc. As discussed herein, the Liquidation Sale will take approximately four weeks, concluding on September 8, 2017.

In addition to the Liquidation Sale, Debtor seeks permission to reject the lease for the Premises. As part of the rejection, Debtor will turn over possession of the Premises to the Landlord on September 8, 2017 pursuant to the terms of the lease, in broom-clean condition.

IV. **ARGUMENT**

A. **The Court Should Permit the Conducting of the Liquidation Sale.**

1. *The Debtor Has a Valid Business Justification for the Liquidation Sale.*

Section 363(b)(1) of the Bankruptcy Code, which governs assets sales outside of a debtor's ordinary course of business, provides that "the trustee [or debtor in possession], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). When selling assets outside of the ordinary course of business, a debtor must articulate a valid business justification to obtain court approval. *In re 240 N. Brand Partners, Ltd.*, 200 B.R. 653, 659 (BAP 9th Cir. 1996) ("[D]ebtors who wish to

1    utilize §363(b) to dispose of property of the estate must demonstrate that such disposition has a

2    valid business justification.")(citing *Comm of Equity Sec. Holders v Lionel Corp. (In re Lionel*

3    *Corp),* 722 F.2d 1063, 1071 (2d Cir. 1983); *see also, Myers v Martin (In re Martin),* 91 F.3d 389,

4    395 (3d Cir. 1996) (citing *Fulton State Bank v Schipper (In re Schipper),* 933 F.2d 513, 515 (7th

5    Cir. 1991)). When a debtor demonstrates a valid business justification, a strong presumption

6    arises "that in make [the] business decision the directors of a corporation acted on an informed

7

8    basis, in good faith and in the honest belief that the action taken was in the best interests of the

9    company." *Official Comm. Of Subordinated Bondholders v Integrated Res., Inc. (In re*

10   *Integrated Res. Inc.)* 147 B.R. 650, 656 (S.D.N.Y. 1990).

11
        Sufficient business justification exists to approve the proposed the Liquidation Sale under
12
     363(b)(1) of the Bankruptcy Code. The Debtor due, in large part, to the damage caused by
13
     Gurmeet and Jasmine Sahani is not is a position to continue operating business. The Debtor has
14
     determined that the Liquidation Sale on the expedited bases set forth herein, represents the best
15

16   alternative to maximize recoveries to the Debtor's estate. Delay in commencing the Liquidation

17   Sale would diminish the recovery tied to the monetization of the Liquidation Sale. Second,

18   Debtor continues to incur rent for its premises and delay of the Liquidation Sale, would only

19
     increase potential administrative and other claims against the estate. The swift and orderly
20
     commencement of the Liquidation Sale will allow Debtor to reject the lease on the premises and
21
22   return the premises to the Landlord by September 8, 2017. With rent in the amount of

23   approximately $66,000 and CAM charges of $22,000, the costs will go up significantly if the

24   Liquidation Sale does not go forward timely.

25
        The Debtor also concluded that hiring GAGP will ensure that the Liquidation Sale is
26
     conducted in a manner that creates the highest returns for the Debtor's estate. GAGP has
27
28   extensive experience conducting liquidation sales and can assist in the implementation of the

1    Liquidation Sale in an efficient and cost-effective manner. As such, retention of GAGP and the

2    Debtor honoring the obligations under the Liquidation Agreement is a sound exercise of the

3    Debtor's business judgment.

4              2.        *The Court Should Approve The Sale Free and Clear of all Liens,*

5                         *Encumbrances and Other Interests Under Bankruptcy Code Section*

6
7                         *363(f).*

8              The Debtor requests approval to sell the assets on a final "as is" basis, free and clear of

9    any liens, claims and encumbrances in accordance with section 363(f) of the Bankruptcy Code.

10   A debtor in possession may sell property under sections 363(b) and 363(f) "free and clear of any

11   interest in such property of an entity other than the estate" if any one of the following conditions

12   is satisfied: (i) applicable non-bankruptcy law permits sale of such property free and clear of

13   such interests; (ii) such entity consents; (iii) such interest is a lien and the price at which such

14   property is to be sold is greater than the aggregate value of all liens on such property; (iv) such

15   interest is in bona fide dispute; or (v) such entity could be compelled in a legal or equitable

16   proceeding, to accept a money satisfaction of such interest. 11 U.S.C. § 363(f); *Citicorp*

17   *Homeowners Servs., Inc. v Elliot (In re Elliot),* 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that

18   since section 363(f) is written in the disjunctive, the court may approve a sale free and clear if

19   any one subsection is met.

20
21             The only known lien affecting the Liquidation Sale would be the lien of GemCap,

22   Debtor's asset based lender. However, Debtor believes that GemCap was paid in full prior to the

23   filing of the Petition. Accordingly, the assets to be sold should be free of any liens. However, out

24   of an abundance of caution Debtor requests a sale free and clear of all liens as the value of the

25   assets are in excess of the amount of any lien that may exist against the asset, thereby satisfying

26
27   § 363(f)(3).

28

3.    *The Court Should Approve the Discretionary Abandonment of Certain Property In Connection with Any Liquidation Sale.*

Under section 554(a) of the Bankruptcy Code, after notice and hearing, a debtor-in-possession "may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. §554(a); *see also Catalano v C.I.R,* 279 F.3d 682, 685 (9th Cir. 2002).

The Debtor is seeking to sell all inventory and assets remaining on the Premises as provided in the Liquidation Agreement. However, Debtor may ultimately determine that the costs associated with holding or selling certain assets exceeds the proceeds that will be realized upon its sale, or that such property is not saleable at all. In such event, the property is of inconsequential value and benefit to the estate and/or may be burdensome to retain.

To maximize the value of the Debtor's assets and to minimize the costs to the bankruptcy estate, the Debtor respectfully requests authority to abandon any of their remaining assets or other property located on the Premises without incurring liability to any person or entity. The Debtor further requests that the Landlord be authorized to dispose of such property, if any, without liability to any third parties.

Notwithstanding the foregoing the Debtor will utilize all commercially reasonable efforts to remove or cause to be removed any confidential or personal identifying information (which means information which alone or in conjunction with other information identifies an individual, including, but not limited to, an individual's name, social security number, date of birth, government-issued identification number, account number, and credit or debtor card number) in any of the Debtor's hardware, software, computers or similar equipment that are to be sold or abandoned.

**B. <u>Retention and Employment of the Liquidator is Permitted Under Sections 327
and 328 of the Bankruptcy Code.</u>**

Under § 327(a) of the Bankruptcy Code, a debtor in possession may employ professional

persons who "do not holder or represent an interest adverse to the estate, and that are

disinterested under this title" 11 U.S.C. § 327(a). Section 101(14) of the Bankruptcy Code

defines a "disinterested person" as a person that: (1) is not a creditor, an equity security holder,

or an insider; (2) is not and was not , within two years before the date of the filing of the petition

a director, officer, or employee of the debtor; and (3) does not have an interest materially adverse

to the interest of the estate or of any class of creditors or equity security holders, by reason of any

direct or indirect relationship to, connection with, or interest in, the debtor, or for any other

reason. 11 U.S.C. § 101(14). An "insider" as applicable to a corporate debtor, is a (i) director of

the debtor; (ii) officer of the debtor, (iii) person in control of the debtor; (iv) partnership in which

the debtor is a general partner; (v) general partner of the debtor; or (vi) relative of a general

partner, director, officer or person in control of the debtor." 11 U.S.C. § 101(31)(B). As

addressed above, and as contained in the Weitz Declaration, GAGP is employable under section

327(a), as a disinterested party with the professional knowledge and experience to conduct the

Liquidation Sale, which is vital to carrying out the Debtor's duties in this chapter 11 case.

Section 328 of the Bankruptcy Code provides, in relevant part, that a debtor, "with the

court's approval, may employ or authorize the employment of a professional person under

section 327 . . . of this title . . . on any reasonable terms and conditions of employment including

on a retainer, on an hourly basis, on a fixed or percentage fee basis or on a contingent fee basis."

11 U.S.C. § 328(a). Section 328 permits the compensation of professionals on flexible terms that

reflect the nature of their services and market conditions. As the United States Court of Appeals

for the fifth Circuit recognized in *In re Nat'l Gypsum Co.,* 123 F.3d 861 (5th Cir. 1997):

16

1
2
3
4
5

> Prior to 1978, the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants reasonable compensation based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

6   *Id.* at 862 (internal quotation marks and citation omitted).

7   The terms and conditions of the Liquidation Agreement were negotiated by the Debtor

8   and GAGP at arm's-length and in good faith. The Debtor respectfully submits that the

9

10  compensation and other provisions contained in the Liquidation Agreement are reasonable in

11  light of, among other things (a) the nature and scope of services to be provided by GAGP, (b)

12  industry practice, (c) market rates charged for comparable services both in and out of the chapter

13  11 context by GAGP and other leading liquidation consultants in the industry and (d) GAGP's

14  extensive experience conducting liquidation sales.

15  Retaining and employing GAGP under the terms of the Liquidation Agreement is both

16  necessary and in the best interests of the Debtor's estate and any parties in interest, as the

17
18  Liquidation Consultant's services are fundamental to the Debtor's maximization of the value of

19  the Debtor's estate for the benefit of all stakeholders. The Debtor believes that the terms of

20  conditions of the Liquidation Agreement are reasonable and that GAGP is well qualified to

21  perform all services contemplated therein in a cost-effective, efficient and timely manner. In

22  light of the foregoing, the Court should approve the employment and retention of GAGP under

23  the terms of the Liquidation Agreement. *See, e.g. In re General Wireless [RadioShack II],* Case

24  No 17-10506 (BLS)(Bankr. D.Del. April 10, 2017) (authorizing employment of liquidation

25  consultant in connection with store closing sales).

26
27  ///

28  ///

## C. **Debtor Has Shown Good Cause for the Lease Rejection**

Section 365(a) of the Bankruptcy Code provides that a debtor may assume or reject any executory contract or unexpired lease of the debtor subject to the approval of the bankruptcy court. *See*, 11 U.S.C. § 365(a)([T]he trustee [or debtor in possession], subject to the court's approval, may reject any executory contract or unexpired lease of the debtor.") Although section 365(a) does not provide a standard for determining whether a debtor may assume or reject an executory contract or unexpired lease, courts generally approve a debtor's decision to assume or reject upon a showing that such debtor exercised its sound business judgment. *See, In re Pomona Valley Med. Group, Inc.*, 476 F.3d 665, 670 (9th Cir. 2007); *In re G.I. Indus., Inc.*, 204 F.3d 1276, 1282 (9th Cir. 2000). As the Ninth Circuit Court of Appeals articulated:

> [I]n evaluating the rejection decision the bankruptcy court should presume that the debtor-in-possession acted prudently, on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the bankruptcy estate. It should approve the rejection of an executory contract under § 365(a) unless it finds that the debtor-in-possession's conclusion could not be based on sound business judgment, but only on bad faith, or whim or caprice."

*In re Pomona Valley Med. Grp., Inc.* 476 F.3d at 670 (9th Cir. 2007)(quoting *Lubrizol Enter v Richmond Metal Finishers*, 756 F.2d 1043, 1047 (4th Cir. 1985)(internal citations omitted). Thus, courts provide great deference to a debtor's decision to assume or reject a lease or executory contract. *See, e.g. Summit Land Co. v Allen (In re Summit Land Co.)* 13 B.R. 310, 315 (Bankr. D. Utah 1981) (noting that, absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course"). Under the business judgment test, the inquiry focuses on the benefit to the debtor's estate resulting from the rejection rather than the mere unprofitability of the contract. *See, In re Minges*, 602 F.2d 28, 43 (3d Cir. 1979). Further, a lease rejection motion" should be considered a summary proceeding, intended to efficiently review the trustee's or debtor's decision to adhere to or reject a particular contract in the course of the swift administration of the bankruptcy estate. It

is not the time or place for prolonged discovery or a lengthy trial with disputed issues." *In re Old Carco LLC,* 406 B.R. 180, 188 (Bankr S.D.N.Y.. 2009) (quoting *Orion Pictures Corp v. Showtime Networks (In re Orion Pictures Corp.)* 4 F.3d 1095, 1098 (2d Cir. 1993).

The Debtor's decision to reject the lease for the Premises is a valid exercise of the Debtor's business judgment. Once Debtor completes its Liquidation Sale, there will be no further need for the premises. Rejecting the lease for the Premises is the most efficient way to minimize administrative burdens to the estate while providing the Landlord time to re-let the Premises.

**D.  The Order Should Be Effective Immediately.**

Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm" Fed.R.Bankr.P. 6003. The Debtor submits that for the reasons already set forth herein, the relief requests in this Motion is necessary to avoid immediate and irreparable harm to the Debtor.

The debtor further seeks a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(b): "[a]n order authorizing the use, sale or lease of property other than cash collateral is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise." As set forth above, the relief requested herein is essential to prevent irreparable damage to the Debtor's estate and its effort to maximize value of its assets for the benefit of the estate. Thus, the relief sought in this Motion is appropriate under these circumstances.

**V.    CONCLUSION**

Based upon the foregoing, the Debtor respectfully requests that the court enter an order, on an emergency basis, authorizing: (1) the Debtor to conduct the Liquidation Sale; (2) the employment and retention of GAGP effective as of August 14, 2017, including the approval of

1   the terms of the Liquidation Agreement; and (3) such other and further relief as the Court deems

2   just and property.

3   DATED: August 18, 2017                          GOODMAN LAW OFFICES
4                                                    A Professional Corporation

5                                                    By: _____
6                                                        ANDREW GOODMAN
7                                                        Proposed counsel for
                                                         Rajysan, Inc. dba MMD Equipment
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF GURPREET SAHANI

I, Gurpreet Sahani, declare:

1.    I am the current CEO of Rajysan, Inc. dba MMD Equipment. I make this declaration of my own personal knowledge and if called to testify thereto.

2.    I make this declaration in support of the Debtor's Emergency Motion For Interim And Final Order Authorizing: (1) The Conduct Of Asset And Inventory Liquidation Sale; (2) The Employment And Retention Of Ga Global Partners As Liquidation Agent Effective August 14, 2017 (the "Motion").

3.    Debtor has been, essentially a family run business. The shareholders are Amarjit Sahani, Rajinder Sahani, Gurpreet Sahani and Gurmeet Sahani. Amarjit and Rajinder Sahani are the parents of me and my brother Gurmeet Sahani.

4.    The Debtor was incorporated in 1991. From 1991 through 2007, Debtor's core business was the manufacturing, import export, and wholesale distribution of parts for forklift and material handling equipment. In 2007, the assets were sold.

5.    In May of 2009, Debtor purchased the assets of Mitsui Machinery Distribution (MMD) and operated under the dba MMD Equipment. From 2009 through 2017, Debtor was the exclusive distributor of AIRMAN towable diesel driven air compressors and towable diesel driven generators. These are manufactured in Japan by Hokuetsu Industries Co., Ltd.

6.    On September 11, 2013, the Board of Directors called a duly noticed special meeting, wherein the majority of members of the Board of Directors elected to terminate Gurmeet as an officer and employee of Rajysan, effective immediately. As discussed above and set forth in the Complaint filed by the Debtor against Gurmeet, during his tenure, Gurmeet was able to convert millions of dollars to his own personal use and detriment of the Debtor.

7.    His actions, also caused the Debtor to lose its exclusive distributorship agreement with Hokuetsu Industries Co., Ltd. Of Japan, in January 2017. This exclusive distributorship agreement was extremely vital to the survival of the business as the products distributed under this agreement were what made up the core of business activities. The products distributed under this exclusive agreement made up more than 80% of revenue between 2009 and 2017. These revenues peaked to a high of almost $50 million in 2014 and at the very least a revenue of approximately $20 million in 2016. Although sales revenue declined between 2014 and 2016, by late 2016 the company had restructured its operations and had successfully refocused its sales and marketing strategy towards the equipment rental industry which was the traditional core of the company's sales activities prior to the previous CEO's narrow focus of targeting the oil and gas sector.

8.    As a result of Gurmeet and Jasmine Sahani diverting substantial monies and as a result of the business decisions made by Gurmeet during his tenure in charge of the Debtor's operations, Debtor was left no choice but to liquidate its assets and maximize their value for the benefit of creditors.

9.    Debtor initially sought to execute an Assignment for Benefit of Creditors which was opposed by Gurmeet. After the Los Angeles Superior Court issued a tentative ruling appointing a receiver and before entry of any order by the Superior Court, Debtor filed this Chapter 11 proceeding.

10.    After filing the Petition, I spoke and met with three different companies which specialize in liquidating assets in Chapter 7 and Chapter 11 bankruptcy proceedings. Ultimately, on or about August 11, 2017, Debtor decided to retain, subject to Court approval GAGP to conduct the Liquidation Sale. A true and correct copy of the liquidation proposal is attached hereto as **Exhibit "A"**.

11.    The expeditious conduct and completion of the Liquidation Sale will maximize the value of the Debtor's assets for the benefit of creditors and minimize the post-petition lease obligations incurred by the Debtor.

12.    Under the terms of the agreement with GA Global, GA Global will serve as Liquidating Agent. The Debtor seeks to employ the GAGP so that the Debtor may leverage the experience and resources of GAGP in swiftly performing and completing the liquidation while retaining control over the sale process, which the Debtor believes will provide maximum benefit to the estate. A true and correct copy of the GAGP proposal is attached hereto as Exhibit "A".

13.    In accordance with the proposal, GAGP is entitled to compensation as follows: GAGP proposes a Net Guarantee of $204,500 for all of the contemplated Assets & Equipment. All proceeds over the Net Guarantee would be split as follows: the next $30,000 would go to GAGP for expense reimbursement and initial compensation and all proceeds above $234,500.00 would be split 85/15 with Debtor receiving the larger share. GAGP would pay all direct sale related expense and would charge and retain an 18% Buyer's Premium. This was the best proposal Debtor received.

14.    To the best of my knowledge, information and belief, other than as set forth in the Weitz Declaration, GAGP: (a) has no connection with the Debtor, its creditors, other parties in interest, or the attorneys or accountants of any of the foregoing, or the United States Trustee or any person employed in the Office of the United States Trustee; (b) does not hold any interest adverse to the Debtor's estate; and (c) believes it is a "disinterested person" as defined by section 101(14) of the Bankruptcy Code. Accordingly, the Debtor believes that GAGP is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code.

15.    GAGP will review its files periodically during the pendency of this chapter 11 case to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new

1  relevant facts or relationships are discovered or arise in such review, GAGP will use reasonable

2  efforts to identify such further developments and will promptly file a supplemental affidavit, as

3  required by Bankruptcy Rule 2014(a).

4      16.    Debtor is no longer operating. Selling its assets as quickly as possible will insure

5  the best return for the benefit of the estate. Second, Debtor continues to incur rent for its

6  premises and delay of the Liquidation Sale, would only increase potential administrative and

7  other claims against the estate. The swift and orderly commencement of the Liquidation Sale will

8  allow Debtor to reject the lease on the premises.

9

10     17.    The only known lien affecting the Liquidation Sale would be the lien of GemCap,

11 Debtor's asset based lender. However, Debtor believes that GemCap was paid in full prior to the

12 filing of the Petition. Accordingly, the assets to be sold should be free of any liens. However, out

13 of an abundance of caution Debtor requests a sale free and clear of all liens as the value of the

14 assets are in excess of the amount of any lien that may exist against the assets.

15

16     18.    The terms and conditions of the Liquidation Agreement were negotiated by the

17 Debtor and GAGP at arm's-length and in good faith. The Debtor respectfully submits that the

18 compensation and other provisions contained in the Liquidation Agreement are reasonable in

19 light of, among other things (a) the nature and scope of services to be provided by GAGP, (b)

20 industry practice, (c) market rates charged for comparable services both in and out of the chapter

21 11 context by GAGP and other leading liquidation consultants in the industry and (d) GAGP's

22 extensive experience conducting liquidation sales.

23

24     19.    Retaining and employing GAGP under the terms of the Liquidation Agreement is

25 both necessary and in the best interests of the Debtor's estate and any parties in interest, as the

26 Liquidation Consultant's services are fundamental to the Debtor's maximization of the value of

27 the Debtor's estate for the benefit of all stakeholders. The Debtor believes that the terms of

28

1    conditions of the Liquidation Agreement are reasonable and that GAGP is well qualified to

2    perform all services contemplated therein in a cost-effective, efficient and timely manner. In

3    light of the foregoing, the Court should approve the employment and retention of GAGP under

4    the terms of the Liquidation Agreement.

5          I declare under penalty of perjury under the laws of the United States of America that the

6    foregoing is true and correct.

7          Executed this 18th day of August 2017, at Simi Valley, California

8

9

10

11                              GURPREET SAHANI

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# DECLARATION OF MARK WEITZ

I, Mark Weitz, declare:

1.      I am a principal of GA Global Partners, LLC, a subsidiary of Great American Group ("GAGP"). I make this declaration of my own personal knowledge and if called to testify, could and would competently testify thereto.

2.      GAGP has extensive expertise in the Orderly Liquidation and Auction of inventory, furniture, fixtures, equipment and other assets, including that of similar companies and inventories. The principals of GA Global have 30 years of practical experience in liquidations, insolvency, valuations and asset monetization. GAGP is the Industrial Disposition Arm of Great American Group, one of the largest and most prestigious Auction/liquidation companies in the United States. GAGP's asset disposition team has conducted thousands of liquidation and auction assignments with the aggregate value of liquidated assets measured in the billions of dollars.

3.      Under the terms of the agreement, GAGP will serve as Liquidating Agent The Debtor seeks to employ the GAGP so that the Debtor may leverage the experience and resources of GAGP in swiftly performing and completing the liquidation while retaining control over the sale process, which the Debtor believes will provide maximum benefit to the estate. A true and correct copy of the GAGP proposal is attached hereto as **Exhibit "A"**.

4.      In accordance with the proposal, GAGP is entitled to compensation as follows: GAGP proposes a Net Guarantee of $204,500 for all of the contemplated Assets & Equipment. All proceeds over the Net Guarantee would be split as follows: the next $30,000 would go to GAGP for expense reimbursement and initial compensation and all proceeds above $234,500.00 would be split 85/15 with Debtor receiving the larger share. GAGP would pay all direct sale related expense and would charge and retain an 18% Buyer's Premium.

5.     To the best of my knowledge, information and belief, GAGP: (a) has no connection with the Debtor, its creditors, other parties in interest, or the attorneys or accountants of any of the foregoing, or the United States Trustee or any person employed in the Office of the United States Trustee; (b) does not hold any interest adverse to the Debtor's estate; and (c) believes it is a "disinterested person" as defined by section 101(14) of the Bankruptcy Code. Accordingly, the Debtor believes that GAGP is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code.

6.     GAGP will review its files periodically during the pendency of this chapter 11 case to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise in such review, GAGP will use reasonable efforts to identify such further developments and will promptly file a supplemental affidavit, as required by Bankruptcy Rule 2014(a).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this _17th_ day of August 2017, at _Los Angeles_, California

_Mark J. Weitz_
_____
MARK WEITZ