Andrew Goodman, Esq. (State Bar No. 115685)
**GOODMAN LAW OFFICES**
**A PROFESSIONAL CORPORATION**
6345 Balboa Boulevard, Suite I-300
Encino, California 91316-1523
PHONE: (818) 827-5169; FAX: (818) 975-5256
E-Mail: agoodman@andyglaw.com

(Proposed) Attorneys for Debtor and Debtor In Possession
Rajysan, Inc. dba MMD Equipment

## UNITED STATE BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### NORTHERN DIVISION

| | |
|---|---|
| In Re | CASE NO. 9:17-bk-11363-PC |
| RAJYSAN, INC. dba MMD EQUIPMENT, a California corporation. | Chapter 11 |
| | **MOTION ON SHORTENED NOTICE FOR ORDER AUTHORIZING:** |
| | **(1) THE CONDUCT OF ASSET AND INVENTORY LIQUIDATION SALE;** |
| Debtor. | **(2) THE EMPLOYMENT AND RETENTION OF GA GLOBAL PARTNERS AS LIQUIDATION AGENT;** |
| | **(3) THE REJECTION OF DEBTOR'S NON-RESIDENTIAL REAL PROPERTY LEASE AND SURRENDER OF LEASEHOLD;** |
| | **(4) WAIVER OF FOURTEEN DAY WAITING PERIOD FOR ORDER TO BECOME EFFECTIVE.** |
| | **MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF GURPREET SAHANI AND MARK WEITZ** |
| | <u>**Hearing On Shortened Notice**</u> DATE: September 13, 2017 TIME: 10:00 a.m. PLACE: Courtroom 201 1415 State Street Santa Barbara, CA. |

# TABLE OF CONTENTS

I.    JURISDICTION ........................................................................................................ 5

II.   BACKGROUND FACTS ......................................................................................... 6

    A.    History .................................................................................................... 6

    B.    Internal Disputes With Gurmeet Sahani ................................................ 6

    C.    Reasons For Filing Chapter 11. ............................................................. 9

III.  THE LIQUIDATION SALE AND ASSETS TO BE SOLD ................................... 10

IV.   THE PROPOSED EMPLOYMENT OF GA GLOBAL PARTNERS. .................. 13

V.    THE REJECTION OF NON-RESIDENTIAL REAL PROPERTY LEASEAND
SURRENDER OF DEBTOR'S INTEREST IN REAL PROPERTY ........................... 15

VI.   ARGUMENT .......................................................................................................... 16

    A.    The Court Should Permit the Conducting of the Liquidation Sale. ...... 16

        1.    The Debtor Has a Valid Business Justification for the Liquidation Sale. 16

        2.    The Court Should Approve The Sale Free and Clear of all Liens,
Encumbrances and Other Interests Under Bankruptcy Code Section
363(f) .............................................................................................. 18

    B.    Retention and Employment of the Liquidator is Permitted Under Sections
327 and 328 of the Bankruptcy Code. .................................................. 19

    C.    Debtor Has Shown Good Cause for the Lease Rejection ...................... 21

    D.    The Order Should Be Effective Immediately. ...................................... 22

VII.  CONCLUSION ........................................................................................................ 22

DECLARATION OF GURPREET SAHANI ................................................................. 24

DECLARATION OF MARK WEITZ ............................................................................ 32

# TABLE OF AUTHORITIES

CASES

*Citicorp Homeowners Servs., Inc. v Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) ....... 18

*Comm of Equity Sec. Holders v Lionel Corp. (In re Lionel Corp)*, 722 F.2d 1063, 1071 (2d Cir. 1983) ................................................................................................................................ 16

*Fulton State Bank v Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991) ..................... 16

*In re 240 N. Brand Partners, Ltd.*, 200 B.R. 653, 659 (BAP 9th Cir. 1996) ................................ 16

*In re G.I. Indus., Inc.*, 204 F.3d 1276, 1282 (9th Cir. 2000) ........................................................ 21

*In re General Wireless [RadioShack II]*, Case No 17-10506 (BLS)(Bankr. D.Del. April 10, 2017) ................................................................................................................................ 21

*In re Minges*, 602 F.2d 28, 43 (3d Cir. 1979) ............................................................................... 22

*In re Nat'l Gypsum Co.*, 123 F.3d 861 (5th Cir. 1997) ................................................................. 20

*In re Old Carco LLC*, 406 B.R. 180, 188 (Bankr S.D.N.Y.. 2009) ............................................... 23

*In re Pomona Valley Med. Group, Inc.*, 476 F.3d 665, 670 (9th Cir. 2007) ................................ 21

*In re Pomona Valley Med. Grp., Inc.* 476 F.3d at 670 (9th Cir. 2007) ........................................ 22

*Lubrizol Enter v Richmond Metal Finishers*, 756 F.2d 1043, 1047 (4th Cir. 1985) .................... 22

*Myers v Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) ................................................. 16

*Official Comm. Of Subordinated Bondholders v Integrated Res., Inc. (In re Integrated Res. Inc.)* 147 B.R. 650, 656 (S.D.N.Y. 1990) .......................................................................... 16

*Orion Pictures Corp v. Showtime Networks (In re Orion Pictures Corp.)* 4 F.3d 1095, 1098 (2d Cir. 1993) ........................................................................................................................ 23

*Summit Land Co. v Allen (In re Summit Land Co.)* 13 B.R. 310, 315 (Bankr. D. Utah 1981) ...... 22

STATUTES

11 U.S.C. § 101(14) ...................................................................................................................... 19

11 U.S.C. § 101(31)(B) ................................................................................................................. 19

11 U.S.C. § 327(a) ........................................................................................................................ 18

11 U.S.C. § 328(a) ........................................................................................................................ 19

11 U.S.C. § 363(b)(1) ................................................................................................................... 15

11 U.S.C. § 363(f) .......................................................................................................... 18

11 U.S.C. § 365(a) .......................................................................................................... 20

28 U.S.C. § 1408 .............................................................................................................. 5

28 U.S.C. § 157 ................................................................................................................. 5

28 U.S.C. § 157(b)(2) ....................................................................................................... 5

Fed.R.Bankr.P. 6003 ....................................................................................................... 21

TO THE HONORABLE PETER CARROLL, UNITED STATES BANKRUPTCY JUDGE, THE UNITED STATES TRUSTEE, ALL PARTIES IN INTEREST HEREIN AND THEIR RESPECTIVE COUNSEL.

**PLEASE TAKE NOTICE** that Debtor and Debtor in Possession Rajysan, Inc., dba MMD Equipment ("MMD" or the "Debtor") hereby submits this motion (the "Motion") on a shortened notice[1] basis for entry of an order pursuant to sections 105, 327, 328, 362, 363, 365, 554, 1107 and 1108 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules and each a "Bankruptcy Rule) authorizing: (i) the Debtor to conduct a liquidation of specific assets and inventory ("Liquidation Sale"); (ii) the employment and retention of GA Global Partners ("GAGP" or the "Liquidation Consultant") to conduct the Liquidation Sale including the approval of GAGP's compensation as agreed to by and between GAGP and the Debtor; (iii) authorizing the rejection of the lease for the premises located at 4175 Guardian Street, Simi Valley, California 93063 and the surrender of the leasehold interest ; (iv) waiver of the 14 day waiting period provided for in Fed.R.Bankr.P 6004(h); and (v) granting such other relief as the Court deems just and property.

As set forth in the accompanying Memorandum of Points and Authorities and Declarations, there are good and sufficient grounds for granting this Motion. As a result of certain pre-petition actions of prior management and the loss of an exclusive distribution agreement in January 2017, Debtor does not have the funds to continue ongoing operations. Debtor has determined, in its business judgement, that the best option for maximum distribution to creditors is to conduct the Liquidation Sale, obtain the highest and best possible price for its assets and repay its creditors from the monies generated from the Liquidation Sale and other assets of the Debtor. The Debtor now seeks to retain an experienced liquidation expert, GA Global Partners, to conduct and complete the Liquidation Sale.

---

[1] The Court granted an order shortening time on August 22, 2017.

1         This Motion is based upon these moving papers, the accompanying Memorandum of

2    Points and Authorities, the Declaration of Gurpreet Sahani, CEO of the Debtor and Mark Weitz

3    of GA Global Partners, the records and pleadings in this case, the arguments and representations

4    of counsel, and any oral or documentary evidence presented at or prior to the time of the hearing.

5         **PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule 2081-1

6    this Motion is being heard on shortened notice pursuant to the Bankruptcy Court's order of

7    August 22, 2017. Pursuant to the Order Shortening Time any response, written or oral, to the

8    moving papers may be filed and served on appropriate parties **no later than September 6, 2017.**

9         **PLEASE TAKE FURTHER NOTICE** that Notice of this Motion is being served on the

10   following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States

11   Trustee, (b) Debtor's twenty (20) largest unsecured creditors; (c) the landlord who is party to the

12   lease affected by the Liquidation Sale; (d) GemCap, the Debtor's secured lender[2]; (e) any other

13   known secured creditors; and (e) parties that file with the Court and serve upon the Debtor

14   requests for notice of all matters in accordance with Bankruptcy Rule 2002.

15        **WHEREFORE**, for all the foregoing reasons, and such additional reasons as may be

16   advanced at or prior to the hearing on this Motion, the Debtor respectfully requests that the Court

17   enter an Order authorizing: (i) the Debtor to conduct a liquidation of specific assets and

18   inventory ("Liquidation Sale"); (ii) the employment and retention of GA Global Partners

19   ("GAGP" or the "Liquidation Consultant") to conduct the Liquidation Sale including the

20   approval of GAGP's compensation as agreed to by and between GAGP and the Debtor; (iii) the

21   rejection of the lease for the premises located at 4175 Guardian Street, Simi Valley, California

22   93063 and the surrender of the leasehold interest ; (iv) waiver of the 14 day waiting period

23   ///

24   ///

25   ///

26   ///

27

28   [2] Debtor believes GemCap was paid in full prior to the filing of the Petition but is serving GemCap out of
an abundance of caution.

1    provided for in Fed.R.Bankr.P 6004(h); and (v) granting such other relief as the Court deems just

2    and property.

3    DATED: August **25**, 2017

                                   GOODMAN LAW OFFICES

4                                       A Professional Corporation

5

6                                       By: _____

7                                           ANDREW GOODMAN
                                          Proposed counsel for
                                          Rajysan, Inc. dba MMD Equipment

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

Debtor and Debtor in Possession, Rajysan, Inc. dba MMD Equipment, a California corporation ("MMD" or "Debtor"), having commenced this Chapter 11 bankruptcy case on July 29, 2017 (the "Petition Date") hereby submits this motion (the "Motion") on an shortened notice basis, authorizing (i) the Debtor to conduct a liquidation of specific assets and inventory ("Liquidation Sale"); (ii) the employment and retention of GA Global Partners ("GAGP" or the "Liquidation Consultant") to conduct the Liquidation Sale including the approval of GAGP's compensation as agreed to by and between GAGP and the Debtor; (iii) the rejection of the lease for the premises located at 4175 Guardian Street, Simi Valley, California 93063 and the surrender of the leasehold interest; (iv) waiver of the 14 day waiting period provided for in Fed.R.Bankr.P 6004; and (v) granting such other relief as the Court deems just and property..

## I.   JURISDICTION

This Court has jurisdiction over these matters pursuant to 28 U.S.C. § 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The venue of the case is proper pursuant to 28 U.S.C. § 1408 and 1409. The Debtor consents to the entry of a final judgment or order with respect to the Motion if it is determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution. The statutory predicates for the relief requested herein are sections 105, 327, 328, 362, 363, 365, 554, 1107 and 1108 of title 11 of the United States Code (the "Bankruptcy Code"); and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules" and each a "Bankruptcy Rule").

## II.    BACKGROUND FACTS

### A.    History

Debtor has been, essentially a family run business. The shareholders are Amarjit Sahani, Rajinder Sahani, Gurpreet Sahani and Gurmeet Sahani. Amarjit and Rajinder Sahani are the parents of Gurpreet ("Pete") Sahani and Gurmeet Sahani.

The Debtor was incorporated in 1991. From 1991 through 2007, Debtor's core business was the manufacturing, import export, and wholesale distribution of parts for forklift and material handling equipment. In 2007, the assets were sold.

In May of 2009, Debtor purchased the assets of Mitsui Machinery Distribution (MMD) and operated under the dba MMD Equipment. From 2009 through 2017, Debtor was a light assembler and distributor of mobile generators, air compressors, heaters, light towers, and related components. In addition, Debtor was the exclusive distributor of AIRMAN towable diesel driven air compressors and towable diesel driven generators. These are manufactured in Japan by Hokuetsu Industries Co., Ltd.

### B.    Internal Disputes With Gurmeet Sahani

From in or around 2007 until September 11, 2013, Gurmeet Sahani held the titles of and acted as the President and Chief Executive Officer of Rajysan. While acting as Rajysan's President and Chief Executive Officer, Gurmeet assumed a major role in the operation and management of the company, took primary control over corporate operation and management, and shut Rajysan's other officers and directors out of business decisions.

Beginning in October 2012, disputes began between Gurmeet, and the other directors, officers, and shareholders of Rajysan, with respect to the management of Rajysan. In or about October 2012, Gurmeet proposed to Rajysan's other shareholders and directors that the corporation be restructured. In or about late October or November 2012, Gurmeet presented Rajysan's other shareholders and directors with a proposal to restructure the corporation,

pursuant to which new corporate entities would be formed; Rajysan's assets and ongoing business would be transferred to and divided amongst the newly formed entities, and Rajysan would be turned into a management company that would manage the business of the newly-formed entities; ownership in Rajysan would be changed to make Gurmeet the majority owner of the company, to give Jasmine an ownership interest in Rajysan and to reduce Rajinder, Amarjit, and Gurpreet Sahani's ownership interests in Rajysan; and Gurmeet would own a majority or a significant portion of the stock in the newly-formed entities. Rajysan's other directors and shareholders rejected Gurmeet's proposed restructuring plan in its entirety.

Unknown to Rajysan and its other shareholders and directors, prior to Gurmeet proposing the above-referenced restructuring of Rajysan, Gurmeet had already formed two new entities. Invincia and Invincia Equipment Sales Co., Inc., for the purpose of transferring assets and business of Rajysan into those new entities. In fact, Gurmeet had begun conducting business as "Invincia" and "Invincia Finance Co." as early as September 12, 2012. Beginning in September 2012, Gurmeet initiated a series of transactions, whereby Invincia induced one of Rajysan's largest customers, Hertz Equipment Rental Corporation (hereinafter, "Hertz") to reissue a purchase order for $6,804,000 from Rajysan to Invincia. Invincia then purchased large quantities of equipment from Rajysan at a discounted price, and sold such equipment to Hertz at the fair market value associated with such equipment. Invincia retained for itself all profits derived from its sales of the equipment it purchased from Rajysan. As a result of the foregoing scheme, Rajysan lost revenues and profits in the amount of $2,574,990, the difference between the amount Hertz paid Invincia for the equipment and what Invincia paid Rajysan to purchase the equipment.

On August 9, 2013, Gurmeet formed two additional new entities for the purpose of transferring assets and business of Rajysan into those new entities, MMD Equipment, LLC and

Lynxrite Engineered Solutions, LLC. Notably, Rajysan does business under the names "MMD Equipment" and "Lynxrite", and Rajysan owns the registered trademarks MMD Equipment (U.S. Reg. No. 3028559) and Lynxrite (U.S. Reg. No. 4298173).

In an effort to prevent Gurmeet from further malfeasance, on August 16, 2013, the Board of Directors of Rajysan called a duly noticed special meeting, wherein the majority of members of the Board of Directors adopted Bylaws for Rajysan, which, among other things, prohibited any officer of Rajysan from incurring any indebtedness on behalf of the corporation in excess of Ten Thousand Dollars ($10,000.00) without obtaining the prior written consent of the majority of the Board of Directors.

Thereafter, Pete Sahani learned from Rajysan's bank, PNC Bank, that Gurmeet had applied to PNC Bank for the issuance of a $20,000,000 line of credit jointly in the names of Rajysan and Gurmeet's newly-formed entity, Invincia Equipment Sales Co., Inc. The application for the letter of credit was executed by Gurmeet and Jasmine.

On September 11, 2013, the Board of Directors called a duly noticed special meeting, wherein the majority of members of the Board of Directors elected to terminate Gurmeet as an officer and employee of Rajysan, effective immediately. Despite the fact that he was terminated and his ability to act on behalf of Rajysan was restricted to only performed actions approved by the other shareholders of the corporation, at 3:15 a.m. on September 12, 2013, Gurmeet initiated a wire transfer from Rajysan's operating account in the amount of $500,000, which amount was transferred into Gurmeet's personal account. Despite having no authority to do so, Jasmine purportedly approved the wire transfer on behalf of Rajysan.

On October 9, 2013, Debtor filed an action against Gurmeet, Jasmine, Halcyon and Invincia in the Los Angeles Superior Court for Breach of Fiduciary Duty, Conversion, etc. On January 21, 2014, Jasmine Sahani filed a Cross-Complaint against Amarjit Sahani, Rajinder

Sahani Gurpreet Sahani and Rajysan. Discovery has been completed on both actions and the parties are awaiting a trial date.

### C.     <u>Reasons For Filing Chapter 11.</u>

In addition to the large amounts of money stolen and diverted by Gurmeet Sahani and his wife Jasmine Sahani, Debtor lost its exclusive distributorship with Hokuetsu Industries Co., Ltd. in early 2017 due to various violations of the agreement during Gurmeet's tenure as CEO and non-performance of the company due to liquidity issues mainly arising from Gurmeet and Jasmine's actions partially set forth above. This agreement was worth a substantial sum of money each year to Rajysan. (See Declaration of Gurpreet Sahani, ¶ 7)

Lastly, Debtor lost a significant amount of business due to oil prices crashing in 2014-2015. The company was focused on the oil and gas sector almost exclusively and had no other sales strategy under Gurmeet Sahani's tenure. This narrow focus led to a very large concentration of business with one customer. When oil prices crashed MMD lost more than 50% of its sales almost overnight.

### D.     <u>Post-Petition Status of the Debtor</u>

Debtor filed this Chapter 11 on July 29, 2017. At the time of the filing, the Debtor had no cash as Debtor's bank accounts had been levied upon by Sumitomo Mitsui Finance & Leasing ("Sumitomo"). In addition, Debtor has been unable to purchase any product or fulfill any orders for product. Based on the above, Debtor determined that the best course of action was an orderly liquidation.

As of the filing of the Petition, Debtor leased one non-residential parcel of real property at 4175 Guardian Street, Simi Valley, California 93063. The property consists of approximately 127,000 sq feet. The monthly rent is approximately $66,000.00 and the CAM charges are approximately $22,000.00. The lease for the real property runs through July 2019. The lease is

guaranteed by Gurpreet ("Pete") Sahani, Amarjit Sahani and Rajinder Sahani. Debtor has not paid post-petition rent. The Landlord holds a security deposit of $65,946.92.[3]

In addition, given the lack of any operations at the time the Petition was filed, Debtor has no employees. Gurpreet ("Pete") Sahani, the CEO is the sole person working to wind down Debtor's business. Since there currently are no funds in the Estate, Pete Sahani is not being paid and has not submitted an Insider Compensation Request.

## III.    THE LIQUIDATION SALE AND ASSETS TO BE SOLD.

### A.    The Liquidation Proposals

After filing the Petition, Debtor spoke and met with three different companies which specialize in liquidating assets in Chapter 7 and Chapter 11 bankruptcy proceedings: Perfection Industrial Sales ("Perfection"); Tiger Commercial and Industrial ("Tiger") and GA Global Partners Inc. ("GAGP").

Perfection offered Debtor several options. The first was an outright purchase of the assets, "excluding" the spare parts located on racking" for $125,000.00 with the spare parts be sold on a Zero% seller's fee. The second option was a guaranty sum of $100,000 with the next $25,000 going toward auction sale set up and marketing and then, after $125,000 was received, an 85:15 split in favor of MMD. A Buyers Premium of 16% would be charged to all Auction buyers. The third option was a sale on a 5% fee basis with a Buyers' Premium of 16% and expenses of $25,000.00.

Tiger offered to sell the assets at Zero% commission with expenses capped at $25,000.00 and a Buyers' Premium of 18% from the sale of all assets.

GAGP offered several options: The first was to conduct the sale for no fees or commissions. GAGP would charge and retain an industry standard Buyer's Premium of (18%),

---

[3] The Landlord has filed a Motion To Compel Rejection of the Lease which is also scheduled to be heard by the Bankruptcy Court on September 13, 2017 at 10:00 a.m.

1    charged to all sale purchasers. They would then 'Rebate-Back' Two-Full Points from the

2    collected Buyer's Premium. GAGP would ask for a Direct/Out of Pocket Sale Expense

3    Allocation of $35K to manage and execute the Project (i.e., Marketing & Advertising, Sale

4    Personnel & Travel, Auction Execution & Online Broadcast, Removal of Assets & Complete

5    Accounting Reconciliation, Etc.).  The second proposal was a net guaranty of $204,500 with all

6    proceeds over the net guaranty split as follows: the next $30,000.00 would go to GAGP for

7
      expense reimbursement and thereafter the split would be 85:15 in favor of Debtor. A Buyers'
8
      Premium would also be charged.
9
             On August 11, 2017, Debtor decided to retain, subject to Court approval GAGP to
10
      conduct the Liquidation Sale under the second proposal. After the August 22, 2017, in
11
      conversations with GAGP, it was determined that the guaranty provided by GAGP was based on
12
      an assumption by GAGP that certain assets which were to be included in the sale were in fact
13
      going to be excluded and sold separately as Debtor had other buyers interested in purchasing
14
      them directly and/or were not in working order/saleable. Accordingly, GAGP sought to reduce
15
      the guaranty from $204,500 to $150,000. As a result, Debtor decided to proceed with option one
16
      above, with a reduction of the costs from $35,000 to $25,000.
17

18           The expeditious conduct and completion of the Liquidation Sale will maximize the value

19    of the Debtor's assets for the benefit of creditors and minimize the post-petition lease obligations

20    incurred by the Debtor. As discussed above, Debtor leases a 127,000 square foot facility in Simi

21    Valley California (the "Premises"). Debtor rents the facility from Borstein Enterprises (the

22
      "Landlord"). The current monthly rent for the facility is approximately $66,000.00 and CAM
23
      charges are approximately $22,000.00. The term of the lease runs through July 2019. Allowing
24
      the sale to take as soon as possible will reduce the exposure of the Debtor with regard to rent and
25
      CAM charges to the Landlord.
26

27

28

B. **The Assets To Be Sold**

On August 14, 2017, Debtor filed its Schedules and Statement of Financial Affairs, etc. Attached hereto as **Exhibit "A"** is a true and correct copy of Schedule "B" listing all of Debtor personal property assets.[4]

The assets listed in Schedule B are as follows:

| | | | |
|---|---|---|---|
| 1. | Security Deposit with Landlord - | $65,946.92 | |
| 2. | Accounts Receivable - | $131,281.54 (over 90 days) | |
| 3. | Finished Goods/Goods for Resale - | $2,968,331.97 | |
| 4. | Two Automobiles - | $30,000.00 | |
| 5. | Patents, copyrights, trademarks, etc. | $95,000.00 | |
| 6. | Complaint vs Gurmeet Sahani - | $6,000,000.00[5] | |
| | TOTAL - | $9,290,560.43 | |

Not all of the assets listed in Schedule "B" are to be included in the sale to be conducted by GAGP. The assets to be included in the sale are as follows: FF&E and Finished goods, including goods held for resale, valued at $2,968,331.97 based on appraisal conducted by Hilco Valuation Services, LLC as of January, 2016. The appraisal was done in connection with certain asset based lending Debtor was applying for and obtained from GemCap[6]. A true and correct copy of the Appraisal is attached hereto as **Exhibit "B"** and incorporated herein by this reference.

While the inventory appraisal is about one and one-half years old, Debtor believes that its inventory levels of generally similar products were fairly similar from the time of the appraisal through the filing of the bankruptcy. Debtor's loan documents with GemCap required Debtor to

---

[4] Debtor owns no real property
[5] The litigation is pending in the Los Angeles Superior Court. The parties are waiting for a trial date.
[6] GemCap was paid in full prior to the filing of the Petition but has been given notice of this hearing out of an abundance of caution.

stay up to date and current on the amount/level of inventory and accounts receivable and

GemCap would periodically conduct an audit of the inventory. As of the filing of the bankruptcy,

Debtor believes that the inventory value is approximately $2,314,098.24 which is about seventy-

eight (78%) of the value from the January 2016 Inventory, for a company that lost significant

sales and ability to operate. (See, Sahani Declaration, ¶ 12).A true and correct copy of the most

recent inventory list is attached hereto as **Exhibit "C"**. The FF&E is valued at $268,749.66. A

true and correct copy of the list of Fixed Assets is attached hereto as **Exhibit "D"**.

The assets that will NOT be included in the sale are as follows: Litigation Claims,

Accounts Receivable, Avoidance Actions, Intellectual Property, including Trademarks, Racking

located in the leasehold premises and Vehicles

If approved, all the proceeds from the sale would be deposited into a Debtor In

Possession Account and not used absent further order of this Court.

## IV.    THE PROPOSED EMPLOYMENT OF GA GLOBAL PARTNERS.

Since Debtor was not operating on a day-to-day basis and had no cash as of the filing of

the Petition, Debtor sought out and conferred with prospective liquidating agents to assess the

costs associated with engaging a liquidating agent to conduct the Liquidation Sale. As discussed

above, such prospective liquidating agents included Tiger, Perfection and GAGP. Ultimately,

after considering proposals from all three agents, the Debtor determined, in its business judgment

that the best proposal and the best agent to perform the Liquidation Sale was GAGP.

GAGP has extensive expertise in the orderly liquidation of inventory, furniture, fixtures,

equipment and other assets, including that of similar companies and inventories. The principals

of GA Global have over 30 years of practical experience in liquidations auctions, insolvency,

valuations and asset monetization. GAGP is the Industrial Disposition Arm of Great American

Group, one of the largest and most prestigious Auction/Liquidation companies in the United

States. GAGP's asset disposition team has conducted thousands of liquidation and auction assignments with the aggregate value of liquidated assets measured in the billions of dollars.

GAGP is being employed by the Debtor pursuant to sections 327(a) and 328(a) of the Bankruptcy Code to provide liquidating services to the Debtor. It is standard practice in the Liquidation Consultant's industry for professional to be compensated on a fixed or percentage fee basis, rather than on an incremental hourly basis, for such services. It is not the general practice of, nor is it feasible for, GAGP to keep detailed time records similar to those customarily kept by attorneys. As such, under the terms of the Liquidation Agreement, the Debtor has agreed to compensate GAGP for fees and expenses consistent with industry practice.

Debtor, subject to Court approval has agreed to GAGP's compensation as follows: GAGP proposes to sell all of the assets without commission. GAGP will charge and retain an eighteen percent (18%) Buyer's premium and expenses would be capped at $25,000.00, down from $35,000.00 under the original offer. To the best of the Debtor's knowledge, information and belief, other than as set forth in the Weitz Declaration, GAGP: (a) has no connection with the Debtor, its creditors, other parties in interest, or the attorneys or accountants of any of the foregoing, or the United States Trustee or any person employed in the Office of the United States Trustee; (b) does not hold any interest adverse to the Debtor's estate; and (c) believes it is a "disinterested person" as defined by section 101(14) of the Bankruptcy Code. Accordingly, the Debtor believes that GAGP is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code.

GAGP will review its files periodically during the pendency of this chapter 11 case to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise in such review, GAGP will use reasonable efforts to

identify such further developments and will promptly file a supplemental affidavit, as required by Bankruptcy Rule 2014(a).

As part of their retention, GAGP will inventory, catalogue and photograph the assets. They will then develop a targeted buyer universe and launch a comprehensive marketing campaign, including a brochure and advertisements in Trade Publications, Print Media, Email Blasts, etc.

Prior to the sale, GAGP will call and market to GAGP contacts, manage inquiries and negotiate potential sales, expose the sale to its industry contacts as well as local/regional competitors, trade shows and international markets.

GAGP will manage all aspect of the auction, qualify bidders, prepare equipment for buyer inspections, execute the Auction Event and collect and reconcile buyer payments. After the sale, GAGP will coordinate with Buyers for the removal of the equipment (at Buyer's expense) and then prepare and provide to Debtor a Sale and Auction Report of each item sold, identifying the item by serial number, etc., the price paid, the winning bidder, etc. (See, Declaration of Mark Weitz).

## V.    THE REJECTION OF NON-RESIDENTIAL REAL PROPERTY LEASEAND SURRENDER OF DEBTOR'S INTEREST IN REAL PROPERTY

As discussed above, Debtor is no longer operating its business. At the time of the filing of the Petition Debtor leases ONE property, located 4175 Guardian Street, Simi Valley, California 93063 (the "Premises"). The landlord for the Premises is Borstein Enterprises, 11766 Wilshire Boulevard, Suite 820, Los Angeles, California 90025. Debtor paid rent through July 2017. No post-petition rent has been paid. Accordingly, Debtor seeks permission to reject the lease for the Premises. As part of the rejection, Debtor will turn over possession of the Premises to the Landlord immediately upon completion of the sale of assets/auction, pursuant to the terms of the lease, in broom-clean condition.

1 | **VI.**    **ARGUMENT**

2 |    A. **The Court Should Permit the Conducting of the Liquidation Sale.**

3 |       *1.*     *The Debtor Has a Valid Business Justification for the Liquidation Sale.*

Section 363(b)(1) of the Bankruptcy Code, which governs assets sales outside of a debtor's ordinary course of business, provides that "the trustee [or debtor in possession], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). When selling assets outside of the ordinary course of business, a debtor must articulate a valid business justification to obtain court approval. *In re 240 N. Brand Partners, Ltd.,* 200 B.R. 653, 659 (BAP 9th Cir. 1996) ("[D]ebtors who wish to utilize §363(b) to dispose of property of the estate must demonstrate that such disposition has a valid business justification.")(citing *Comm of Equity Sec. Holders v Lionel Corp. (In re Lionel Corp),* 722 F.2d 1063, 1071 (2d Cir. 1983); *see also, Myers v Martin (In re Martin),* 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v Schipper (In re Schipper),* 933 F.2d 513, 515 (7th Cir. 1991)). When a debtor demonstrates a valid business justification, a strong presumption arises "that in make [the] business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Official Comm. Of Subordinated Bondholders v Integrated Res., Inc. (In re Integrated Res. Inc.)* 147 B.R. 650, 656 (S.D.N.Y. 1990).

Sufficient business justification exists to approve the proposed the Liquidation Sale under 363(b)(1) of the Bankruptcy Code. The Debtor due, in large part, to the damage caused by Gurmeet and Jasmine Sahani is not is a position to continue operating its business. Debtor has no orders, no ability to purchase inventory and has no cash as its bank accounts have been levied by Sumitomo.[7]

---

[7] The levy by Sumitomo was within ninety (90) days prior to the filing of the Petition.

The Debtor has determined that the Liquidation Sale set forth herein, represents the best alternative to maximize recoveries to the Debtor's estate. The assets remaining are the type of assets that are used by specific types of customers, such as construction equipment dealers, general equipment rental companies, construction equipment service and support companies and past customers of the Debtor. Using a liquidation company such as GAGP would provide the Debtor with a network and technology which can access potential buyers nationally and even internationally who have a need for these products. Given that Debtor does not have the assets to operate, Debtor does not have the ability to market the assets and conduct the type of sale that a professional liquidation/auction firm such as GAGP can conduct.

Further, the assets remain in the premises leased by Debtor and no post-petition rent has been paid. Debtor has explored ways to move the assets, including putting them in containers on other parts of the landlord's property so the Landlord can take possession of the Premises and begin the process of mitigating its damages. Unfortunately, due to the amount of product, the size of the product and the fact that Debtor has no cash, Debtor was unable to find a viable way to move the assets from the Premises. As a result, Debtor continues to incur rent for its premises and delay of the Liquidation Sale, would only increase potential administrative and other claims against the estate. The orderly commencement of the Liquidation Sale will allow Debtor to reject the lease on the premises and return the premises to the Landlord. With rent in the amount of approximately $66,000 and CAM charges of $22,000, the costs will go up significantly if the Liquidation Sale does not go forward timely.

The Debtor also concluded that hiring GAGP will ensure that the Liquidation Sale is conducted in a manner that creates the highest returns for the Debtor's estate. GAGP has extensive experience conducting liquidation sales and can assist in the implementation of the Liquidation Sale in an efficient and cost-effective manner. As such, retention of GAGP and the

Debtor honoring the obligations under the Liquidation Agreement is a sound exercise of the

Debtor's business judgment.

> 2. *The Court Should Approve The Sale Free and Clear of all Liens, Encumbrances and Other Interests Under Bankruptcy Code Section 363(f).*

The Debtor requests approval to sell the assets on a final "as is" basis, free and clear of

any liens, claims and encumbrances in accordance with section 363(f) of the Bankruptcy Code.

A debtor in possession may sell property under sections 363(b) and 363(f) "free and clear of any

interest in such property of an entity other than the estate" if any one of the following conditions

is satisfied: (i) applicable non-bankruptcy law permits sale of such property free and clear of

such interests; (ii) such entity consents; (iii) such interest is a lien and the price at which such

property is to be sold is greater than the aggregate value of all liens on such property; (iv) such

interest is in bona fide dispute; or (v) such entity could be compelled in a legal or equitable

proceeding, to accept a money satisfaction of such interest. 11 U.S.C. § 363(f); *Citicorp*

*Homeowners Servs., Inc. v Elliot (In re Elliot),* 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that

since section 363(f) is written in the disjunctive, the court may approve a sale free and clear if

any one subsection is met.

The only known lien affecting the Liquidation Sale would be the lien of GemCap,

Debtor's asset based lender. However, Debtor believes that GemCap was paid in full prior to the

filing of the Petition. Accordingly, the assets to be sold should be free of any liens. However, out

of an abundance of caution Debtor requests a sale free and clear of all liens as the value of the

assets are in excess of the amount of any lien that may exist against the asset, thereby satisfying

§ 363(f)(3).

**B. <u>Retention and Employment of the Liquidator is Permitted Under Sections 327</u>**

  **<u>and 328 of the Bankruptcy Code.</u>**

1    Under § 327(a) of the Bankruptcy Code, a debtor in possession may employ professional

2   persons who "do not holder or represent an interest adverse to the estate, and that are

3   disinterested under this title" 11 U.S.C. § 327(a). Section 101(14) of the Bankruptcy Code

4   defines a "disinterested person" as a person that: (1) is not a creditor, an equity security holder,

5   or an insider; (2) is not and was not , within two years before the date of the filing of the petition

6   a director, officer, or employee of the debtor; and (3) does not have an interest materially adverse

7   to the interest of the estate or of any class of creditors or equity security holders, by reason of any

8   direct or indirect relationship to, connection with, or interest in, the debtor, or for any other

9   reason. 11 U.S.C. § 101(14). An "insider" as applicable to a corporate debtor, is a (i) director of

10   the debtor; (ii) officer of the debtor, (iii) person in control of the debtor; (iv) partnership in which

11   the debtor is a general partner; (v) general partner of the debtor; or (vi) relative of a general

12   partner, director, officer or person in control of the debtor." 11 U.S.C. § 101(31)(B). As

13   addressed above, and as contained in the Weitz Declaration, GAGP is employable under section

14   327(a), as a disinterested party with the professional knowledge and experience to conduct the

15   Liquidation Sale, which is vital to carrying out the Debtor's duties in this chapter 11 case.

16    Section 328 of the Bankruptcy Code provides, in relevant part, that a debtor, "with the

17   court's approval, may employ or authorize the employment of a professional person under

18   section 327 . . . of this title . . . on any reasonable terms and conditions of employment including

19   on a retainer, on an hourly basis, on a fixed or percentage fee basis or on a contingent fee basis."

20   11 U.S.C. § 328(a). Section 328 permits the compensation of professionals on flexible terms that

21   reflect the nature of their services and market conditions. As the United States Court of Appeals

22   for the fifth Circuit recognized in *In re Nat'l Gypsum Co.*, 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978, the most able professionals were often unwilling to work for
> bankruptcy estates where their compensation would be subject to the uncertainties
> of what a judge thought the work was worth after it had been done. That
> uncertainty continues under the present § 330 of the Bankruptcy Code, which

provides that the court award to professional consultants reasonable compensation based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

*Id.* at 862 (internal quotation marks and citation omitted.

The terms and conditions of the Liquidation Agreement were negotiated by the Debtor and GAGP at arm's-length and in good faith. The Debtor respectfully submits that the compensation and other provisions contained in the Liquidation Agreement are reasonable in light of, among other things (a) the nature and scope of services to be provided by GAGP, (b) industry practice, (c) market rates charged for comparable services both in and out of the chapter 11 context by GAGP and other leading liquidation consultants in the industry and (d) GAGP's extensive experience conducting liquidation sales.

Retaining and employing GAGP under the terms of the Liquidation Agreement is both necessary and in the best interests of the Debtor's estate and any parties in interest, as the Liquidation Consultant's services are fundamental to the Debtor's maximization of the value of the Debtor's estate for the benefit of all stakeholders. The Debtor believes that the terms of conditions of the Liquidation Agreement are reasonable and that GAGP is well qualified to perform all services contemplated therein in a cost-effective, efficient and timely manner. In light of the foregoing, the Court should approve the employment and retention of GAGP under the terms of the Liquidation Agreement. *See, e.g. In re General Wireless [RadioShack II],* Case No 17-10506 (BLS)(Bankr. D.Del. April 10, 2017) (authorizing employment of liquidation consultant in connection with store closing sales).

**C. Debtor Has Shown Good Cause for the Lease Rejection**

Section 365(a) of the Bankruptcy Code provides that a debtor may assume or reject any executory contract or unexpired lease of the debtor subject to the approval of the bankruptcy court. *See,* 11 U.S.C. § 365(a)([T]he trustee [or debtor in possession], subject to the court's

approval, may reject any executory contract or unexpired lease of the debtor.") Although section

365(a) does not provide a standard for determining whether a debtor may assume or reject an

executory contract or unexpired lease, courts generally approve a debtor's decision to assume or

reject upon a showing that such debtor exercised its sound business judgment. *See, In re Pomona*

*Valley Med. Group, Inc.,* 476 F.3d 665, 670 (9th Cir. 2007); *In re G.I. Indus., Inc.,* 204 F.3d

1276, 1282 (9th Cir. 2000). As the Ninth Circuit Court of Appeals articulated:

> [I]n evaluating the rejection decision the bankruptcy court should presume that
> the debtor-in-possession acted prudently, on an informed basis, in good faith and
> in the honest belief that the action taken was in the best interests of the
> bankruptcy estate. It should approve the rejection of an executory contract under §
> 365(a) unless it finds that the debtor-in-possession's conclusion could not be
> based on sound business judgment, but only on bad faith, or whim or caprice."

*In re Pomona Valley Med. Grp., Inc.* 476 F.3d at 670 (9th Cir. 2007) (quoting *Lubrizol Enter v*

*Richmond Metal Finishers,* 756 F.2d 1043, 1047 (4th Cir. 1985)(internal citations omitted). Thus,

courts provide great deference to a debtor's decision to assume or reject a lease or executory

contract. *See, e.g. Summit Land Co. v Allen (In re Summit Land Co.)* 13 B.R. 310, 315 (Bankr. D.

Utah 1981) (noting that, absent extraordinary circumstances, court approval of a debtor's

decision to assume or reject an executory contract "should be granted as a matter of course").

Under the business judgment test, the inquiry focuses on the benefit to the debtor's estate

resulting from the rejection rather than the mere unprofitability of the contract. *See, In re Minges,*

602 F.2d 28, 43 (3d Cir. 1979). Further, a lease rejection motion" should be considered a

summary proceeding, intended to efficiently review the trustee's or debtor's decision to adhere to

or reject a particular contract in the course of the swift administration of the bankruptcy estate. It

is not the time or place for prolonged discovery or a lengthy trial with disputed issues." *In re Old*

*Carco LLC,* 406 B.R. 180, 188 (Bankr S.D.N.Y.. 2009) (quoting *Orion Pictures Corp v.*

*Showtime Networks (In re Orion Pictures Corp.)* 4 F.3d 1095, 1098 (2d Cir. 1993).

1    The Debtor's decision to reject the lease for the Premises is a valid exercise of the

2  Debtor's business judgment. Once Debtor completes its Liquidation Sale, there will be no further

3  need for the premises. Rejecting the lease for the Premises is the most efficient way to minimize

4  administrative burdens to the estate while providing the Landlord time to re-let the Premises.

5
6    **D.  The Order Should Be Effective Immediately.**

7    Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if

8  the "relief is necessary to avoid immediate and irreparable harm" Fed.R.Bankr.P. 6003. The

9  Debtor submits that for the reasons already set forth herein, the relief requests in this Motion is

10  necessary to avoid immediate and irreparable harm to the Debtor.

11    The Debtor further seeks a waiver of any stay of the effectiveness of the order approving

12  this Motion. Pursuant to Bankruptcy Rule 6004: "[a]n order authorizing the use, sale or lease of

13  property other than cash collateral is stayed until the expiration of fourteen (14) days after entry

14  of the order, unless the court orders otherwise." As set forth above, the relief requested herein is

15
16  essential to prevent irreparable damage to the Debtor's estate and its effort to maximize value of

17  its assets for the benefit of the estate. Thus, the relief sought in this Motion is appropriate under

18  these circumstances.

19  **VII.    CONCLUSION**

20
21    Based upon the foregoing, the Debtor respectfully requests that the court enter an order,

22  on an emergency basis, authorizing: (i) the Debtor to conduct a liquidation of specific assets and

23  inventory ("Liquidation Sale"); (ii) the employment and retention of GA Global Partners

24  ("GAGP" or the "Liquidation Consultant") to conduct the Liquidation Sale including the

25  approval of GAGP's compensation as agreed to by and between GAGP and the Debtor; (iii)

26  authorizing the rejection of the lease for the premises located at 4175 Guardian Street, Simi

27  Valley, California 93063 and the surrender of the leasehold interest ; (iv) waiver of the 14 day

28

1    waiting period provided for in Fed.R.Bankr.P 6004(h) and (v) granting such other relief as the

2    Court deems just and property

3    DATED: August 25, 2017                    GOODMAN LAW OFFICES

4                                             A Professional Corporation

5                                             By: _____

6                                                 ANDREW GOODMAN

7                                                 Proposed counsel for
                                                 Rajysan, Inc. dba MMD Equipment

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF GURPREET SAHANI

I, Gurpreet Sahani, declare:

1.     I am the current CEO of Rajysan, Inc. dba MMD Equipment. I make this declaration of my own personal knowledge and if called to testify thereto.

2.     I make this declaration in support of the Debtor's Emergency Motion For Interim And Final Order Authorizing: (1) The Conduct Of Asset And Inventory Liquidation Sale; (2) The Employment And Retention Of Ga Global Partners As Liquidation Agent Effective August 14, 2017 (the "Motion").

3.     Debtor has been, essentially a family run business. The shareholders are Amarjit Sahani, Rajinder Sahani, Gurpreet Sahani and Gurmeet Sahani. Amarjit and Rajinder Sahani are the parents of me and my brother Gurmeet Sahani.

4.     The Debtor was incorporated in 1991. From 1991 through 2007, Debtor's core business was the manufacturing, import export, and wholesale distribution of parts for forklift and material handling equipment. In 2007, the assets were sold.

5.     In May of 2009, Debtor purchased the assets of Mitsui Machinery Distribution (MMD) and operated under the dba MMD Equipment. From 2009 through 2017, Debtor was the exclusive distributor of AIRMAN towable diesel driven air compressors and towable diesel driven generators. These are manufactured in Japan by Hokuetsu Industries Co., Ltd.

6.     On September 11, 2013, the Board of Directors called a duly noticed special meeting, wherein the majority of members of the Board of Directors elected to terminate Gurmeet as an officer and employee of Rajysan, effective immediately. As discussed above and set forth in the Complaint filed by the Debtor against Gurmeet, during his tenure, Gurmeet was able to convert millions of dollars to his own personal use and detriment of the Debtor.

7.      His actions, also caused the Debtor to lose its exclusive distributorship agreement with Hokuetsu Industries Co., Ltd. Of Japan, in January 2017. This exclusive distributorship agreement was extremely vital to the survival of the business as the products distributed under this agreement were what made up the core of business activities. The products distributed under this exclusive agreement made up more than 80% of revenue between 2009 and 2017. These revenues peaked to a high of almost $50 million in 2014 and at the very least a revenue of approximately $20 million in 2016. Although sales revenue declined between 2014 and 2016, by late 2016 the company had restructured its operations and had successfully refocused its sales and marketing strategy towards the equipment rental industry which was the traditional core of the company's sales activities prior to the previous CEO's narrow focus of targeting the oil and gas sector.

8.      As a result of Gurmeet and Jasmine Sahani diverting substantial monies and as a result of the business decisions made by Gurmeet during his tenure in charge of the Debtor's operations, Debtor was left no choice but to liquidate its assets and maximize their value for the benefit of creditors.

9.      Debtor initially sought to execute an Assignment for Benefit of Creditors which was opposed by Gurmeet. After the Los Angeles Superior Court issued a tentative ruling appointing a receiver and before entry of any order by the Superior Court, Debtor filed this Chapter 11 proceeding on July 29, 2017.

10.      On August 14, 2017, Debtor filed its Schedules and Statement of Financial Affairs, etc. Attached hereto as **Exhibit "A"** is a true and correct copy of Schedule "B" listing all of Debtor personal property assets. Not all of the assets listed in Schedule "B" are to be included in the sale to be conducted by GAGP. The assets to be included in the sale are as follows: Finished goods, including goods held for resale, valued at $2,968,331.97 based on appraisal

conducted by Hilco Valuation Services, LLC as of January 2016. The appraisal was done in connection with certain asset based lending Debtor was applying for and obtained from GemCap. A true and correct copy of the Appraisal is attached hereto as **Exhibit "B"** and incorporated herein by this reference.

11.    While the inventory appraisal is about one and one-half years old, I believe that Debtor's inventory levels were fairly similar from the time of the appraisal through the filing of the bankruptcy. I state this because Debtor's loan documents with GemCap required it to stay up to date and current on the amount/level of inventory and accounts receivable and GemCap would periodically conduct an audit of the inventory.

12.    As of the filing of the bankruptcy, I believe that the inventory value is approximately $2,314,098.24 which is about seventy-eight (78%) of the value from the January 2016 Inventory, for a company that lost significant sales and ability to operate. A true and correct copy of the most recent inventory list is attached hereto as **Exhibit "C"**. The FF&E is valued at $268,749.66. A true and correct copy of the list of Fixed Assets is attached hereto as **Exhibit "D"**.

13.    At the time of the filing, the Debtor had no cash as Debtor's bank accounts had been levied upon by Sumitomo Mitsui Finance & Leasing ("Sumitomo"). In addition, Debtor has been unable to purchase any product or fulfill any orders for product. Based on the above, Debtor determined that the best course of action was an orderly liquidation.

14.    As of the filing of the Petition, Debtor leased one non-residential parcel of real property at 4175 Guardian Street, Simi Valley, California 93063. The property consists of approximately 127,000 sq. feet. The monthly rent is approximately $66,000.00 and the CAM charges are approximately $22,000.00. The lease for the real property runs through July 2019.

The lease is guaranteed by myself and my parents, Amarjit Sahani and Rajinder Sahani. Debtor has not paid post-petition rent. The Landlord holds a security deposit of $65,946.92.

15.     In addition, given the lack of any operations, at the time the Petition was filed, Debtor has no employees. I am the sole person working to wind down Debtor's business. Since there currently are no funds in the Estate, I am not being paid and have not submitted an Insider Compensation Request.

16.     After filing the Petition, Debtor spoke and met with three different companies which specialize in liquidating assets in Chapter 7 and Chapter 11 bankruptcy proceedings: Perfection Industrial Sales ("Perfection"); Tiger Commercial and Industrial ("Tiger") and GA Global Partners Inc. ("GAGP")

Perfection offered Debtor several options. The first was an outright purchase of the assets, "excluding" the spare parts located on racking" for $125,000.00 with the spare partes be sold on a Zero% seller's fee. The second option was a guaranty sum of $100,000 with the next $25,000 going toward auction sale set up and marketing and then, after $125,000 was received, an 85:15 split in favor of MMD. A Buyers Premium of 16% would be charged to all Auction buyers. The third option was a sale on a 5% fee basis with a Buyers Premium of 16% and expenses of $25,000.00.

Tiger offered to sell the assets at Zero% commission with expenses capped at $25,000.00 and a Buyers' Premium of 18% from the sale of all assets.

GAGP offered several options:  The first was to conduct the sale for no fees or commissions. GAGP would charge and retain an industry standard Buyer's Premium of (18%), charged to all sale purchasers. They would then 'Rebate-Back' Two-Full Points from the collected Buyer's Premium. GAGP would ask for a Direct/Out of Pocket Sale Expense

Allocation of $35K to manage and execute the Project (i.e., Marketing & Advertising, Sale

Personnel & Travel, Auction Execution & Online Broadcast, Removal of Assets & Complete

Accounting Reconciliation, Etc.). The second proposal was a net guaranty of $204,500 with all

proceeds over the net guaranty split as follows: the next $30,000.00 would go to GAGP for

expense reimbursement and thereafter the split would be 85:15 in favor of Debtor. A Buyers'

Premium would also be charged.

17.     On or about August 11, 2017, Debtor decided to retain, subject to Court approval

GAGP to conduct the Liquidation Sale. The original agreement was to proceed under the Second

Proposal with a guaranty to the Debtor..

18.     After the August 22, 2017 hearing, in conversations with GAGP, it was

determined that the price guaranty provided by GAGP was based on an assumption by GAGP

that certain assets that were to be excluded from the sale, were, included in the sale. These were

assets which I had received offers for prior to the bankruptcy and was going sell separately.

Accordingly, GAGP sought to reduce the guaranty from $204,500 to $150,000. As a result,

Debtor decided to proceed with proposal one above, with a reduction of the costs to $25,000.

19.     The assets which were sold prior to bankruptcy include: (i) Wheel and Tires; (ii)

Jack Stands of capacities between 2K and 10K pounds; (iii) Trailer lights and wire; (iv) Honda

parts been in inventory for over 7 years and no sales; (v) Small Honda engines in nonworking

condition and used as parts which were removed from equipment that came in for repairs; (vi)

MMD branded trade show material like literature stands EZ-Up's bar stools etc.; (vii) MMD

invertors in non working condition; (viii) Trailer hitches  2" ball hitches and 2-5/15" ball hitches;

(ix) Hardware for trailers. The total value was $10,000.00, which monies are in possession of the

Debtor.

20.    To the best of my knowledge, information and belief, other than as set forth in the Weitz Declaration, GAGP: (a) has no connection with the Debtor, its creditors, other parties in interest, or the attorneys or accountants of any of the foregoing, or the United States Trustee or any person employed in the Office of the United States Trustee; (b) does not hold any interest adverse to the Debtor's estate; and (c) believes it is a "disinterested person" as defined by section 101(14) of the Bankruptcy Code. Accordingly, the Debtor believes that GAGP is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code.

21.    GAGP will review its files periodically during the pendency of this chapter 11 case to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise in such review, GAGP will use reasonable efforts to identify such further developments and will promptly file a supplemental affidavit, as required by Bankruptcy Rule 2014(a).

22.    The only known lien affecting the Liquidation Sale would be the lien of GemCap, Debtor's asset based lender. However, Debtor believes that GemCap was paid in full prior to the filing of the Petition. Accordingly, the assets to be sold should be free of any liens. However, out of an abundance of caution Debtor requests a sale free and clear of all liens as the value of the assets are in excess of the amount of any lien that may exist against the assets.

23.    The terms and conditions of the Liquidation Agreement were negotiated by the Debtor and GAGP at arm's-length and in good faith. The Debtor respectfully submits that the compensation and other provisions contained in the Liquidation Agreement are reasonable in light of, among other things (a) the nature and scope of services to be provided by GAGP, (b) industry practice, (c) market rates charged for comparable services both in and out of the chapter 11 context by GAGP and other leading liquidation consultants in the industry and (d) GAGP's extensive experience conducting liquidation sales.

24.     The Debtor has determined that the Liquidation Sale set forth herein, represents the best alternative to maximize recoveries to the Debtor's estate. The assets remaining include, replacement parts, finished goods, material handling equipment (forklifts, pallet jacks, etc.), packing supplies, finished and semi-finished generators, light towers, heaters and spare parts. These are the type of assets that are used by specific types of customers, such as construction equipment dealers, general equipment rental companies, construction equipment service and support companies and past customers of the Debtor.

25.     Retaining a company such as GAGP would provide Debtor with a network and technology which can access potential buyers nationally and even internationally who have a need for these products. Given that Debtor does not have the assets to operate, Debtor does not have the ability to market the assets and conduct the type of sale that a professional liquidation/auction firm such as GAGP can conduct.

26.     Further, the assets remain in the premises leased by Debtor. Debtor has explored ways to move the assets, including putting them in containers on other parts of the landlord's property so the Landlord can take possession of the Premises and begin the process of mitigating its damages. Unfortunately, due to the amount of product, the size of the product and the fact that Debtor has no cash, Debtor was unable to find a viable way to move the assets from the Premises. As a result, Debtor continues to incur rent for its premises and delay of the Liquidation Sale, would only increase potential administrative and other claims against the estate.

27.     The orderly commencement of the Liquidation Sale will allow Debtor to reject the lease on the premises and return the premises to the Landlord. With rent in the amount of approximately $66,000.00 and CAM charges of $22,000.00, the costs will go up significantly if the Liquidation Sale does not go forward timely.

1       I declare under penalty of perjury under the laws of the United States of America that the

2  foregoing is true and correct.

3       Executed this 25th day of August 2017, at Simi Valley, California

GURPREET SAHANI

31

### DECLARATION OF MARK WEITZ

I, Mark Weitz, declare:

1.      I am a principal of GA Global Partners, LLC, a subsidiary of Great American Group ("GAGP"). I make this declaration of my own personal knowledge and if called to testify, could and would competently testify thereto.

2.      GAGP has extensive expertise in the Orderly Liquidation and Auction of inventory, furniture, fixtures, equipment and other assets, including that of similar companies and inventories. The principals of GA Global have 30 years of practical experience in liquidations, insolvency, valuations and asset monetization. GAGP is the Industrial Disposition Arm of Great American Group, one of the largest and most prestigious Auction/liquidation companies in the United States. GAGP's asset disposition team has conducted thousands of liquidation and auction assignments with the aggregate value of liquidated assets measured in the billions of dollars.

3.      Under the terms of the agreement, GAGP will serve as Liquidating Agent The Debtor seeks to employ the GAGP so that the Debtor may leverage the experience and resources of GAGP in swiftly performing and completing the liquidation while retaining control over the sale process, which the Debtor believes will provide maximum benefit to the estate. A true and correct copy of the GAGP proposal is attached hereto as **Exhibit "A"**.

4.      In accordance with the proposal, GAGP is entitled to compensation as follows: GAGP will sell all of the assets without commission. GAGP will charge and retain an eighteen percent (18%) Buyer's premium and expenses would be capped at $25,000.00.

5.      As part of its retention, GAGP will inventory, catalogue and photograph the assets. GAGP will then develop a targeted buyer universe and launch a comprehensive marketing

campaign, including a brochure and advertisements in Trade Publications, Print Media, Email Blasts, etc.

6.      Prior to the sale, GAGP will call and market to GAGP contacts, manage inquiries and negotiate potential sales, expose the sale to its industry contacts as well as local/regional competitors, trade shows and international markets.

7.      GAGP will manage all aspect of the auction, qualify bidders, prepare equipment for buyer inspections, execute the Auction Event and collect and reconcile buyer payments. After the sale, GAGP will coordinate with Buyers for the removal of the equipment (at Buyer's expense) and then prepare and provide to Debtor a Sale and Auction Report of each item sold, identifying the item by serial number, etc., the price paid, the winning bidder, etc.

8.      To the best of my knowledge, information and belief, GAGP: (a) has no connection with the Debtor, its creditors, other parties in interest, or the attorneys or accountants of any of the foregoing, or the United States Trustee or any person employed in the Office of the United States Trustee; (b) does not hold any interest adverse to the Debtor's estate; and (c) believes it is a "disinterested person" as defined by section 101(14) of the Bankruptcy Code. Accordingly, the Debtor believes that GAGP is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code.

9.      GAGP will review its files periodically during the pendency of this chapter 11 case to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise in such review, GAGP will use reasonable efforts to identify such further developments and will promptly file a supplemental affidavit, as required by Bankruptcy Rule 2014(a).

///

//

1       I declare under penalty of perjury under the laws of the United States of America that the

2  foregoing is true and correct.

3       Executed this 25 day of August 2017, at Los Angeles , California

4

5

6       MARK WEITZ

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28